**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John Anthony OLIVER, Defendant-Appellant.**

**Nos. 81–2378, 81–2662.**

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1982.
Decided July 16, 1982.

Jon Gray Noll, Springfield, Ill., for defendant-appellant.

R. Mark Mifflin, Asst. U. S. Atty., Gerald D. Fines, U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Circuit Judge, POSNER, Circuit Judge, and GRANT,[*] Senior District Judge.

GRANT, Senior District Judge.

Plaintiff-appellant John Anthony Oliver appeals from his conviction for the receipt and possession of ammunition and firearms in violation of 18 U.S.C. § 922 and 18 U.S.C. app. § 1202. He raises numerous issues in this appeal, each of which will be individually addressed.

### Facts

On or shortly before December 9, 1980, Julian Gabriel loaned his van to the defendant Oliver. This transfer took place in Colorado and the van was to have been returned in a couple of days. One week later, in Springfield, Illinois, where he had gone to repair one of his apartments, Gabriel noticed that his van was parked outside a tavern and decided to enter the tavern and look for Oliver. Gabriel located him and a quarrel ensued over Oliver's failure to return the van. The dispute was apparently resolved and Gabriel borrowed some tools from the proprietor of the tavern to repair his apartment. He and Oliver then left the tavern in the van with Oliver driving and Gabriel in the passenger seat with the tools.

At approximately 6:30 p. m. that evening, agents of the Federal Bureau of Investigation saw the van, stopped it and arrested Oliver pursuant to a material witness arrest warrant which had been issued by a Magistrate for the United States District Court for the Southern District of Iowa. The FBI's investigation had previously determined that Oliver might be in possession of the van. At the point of the arrest, an FBI agent entered the van and discovered a five-shot .38 caliber revolver, loaded with four "wadcutter" rounds, located on the floorboard next to the passenger seat. Further search revealed a bag under the driver's seat which contained a loaded automatic weapon and ten additional rounds of automatic ammunition. Nine additional rounds of automatic ammunition were found in the ashtray of the driver's side of the van. A search of Oliver's person at the time of his arrest uncovered another "wadcutter" round in his front right pants pocket.

On the following day, December 17, 1980, Oliver was indicted by a grand jury in the Central District of Illinois. In two counts, Oliver was charged with possession of the above described weapons and ammunition in violation of 18 U.S.C. app. § 1202(a)(1). Oliver proceeded to file a motion to suppress the physical evidence seized from him and the van at the time of his arrest on the basis that there was no probable cause for the issuance of the material witness arrest warrant. Oliver did not challenge the propriety of the search of the van itself assuming his arrest was lawful. Following a hearing, the motion was denied.

The indictment was dismissed without prejudice on February 13, 1981, upon mo-

---

[*] Honorable Robert A. Grant, Senior District Judge of the United States District Court for the Northern District of Indiana, sitting by designation.

tion of the Government. Additional evidence had been discovered and the Government planned to seek additional and related charges to those of the first indictment. On February 23, 1981, a four-count indictment was returned based on the same events of December 16, 1980. Count I charged Oliver with knowingly receiving ammunition (one to five rounds of .38 caliber wadcutter ammunition) in violation of 18 U.S.C. § 922(h). Count II charged Oliver with knowingly receiving a .38 caliber revolver in violation of 18 U.S.C. § 922(h). Count III charged Oliver with knowingly possessing a .38 caliber revolver in violation of 18 U.S.C. app. § 1202(a)(1). Count IV charged Oliver with knowingly possessing a .38 caliber automatic handgun in violation of 18 U.S.C. app. § 1202(a)(1). Oliver's previous motion to suppress and the district court's ruling on that motion were incorporated into the proceedings on the second indictment.

Prior to trial, the Government filed a motion *in limine* to exclude all reference and evidence to the fact that Oliver possessed at the time of his arrest a valid Illinois Firearm Owner's Identification Card. The district court granted the motion on the ground that such evidence was irrelevant. At trial, Gabriel testified that at the time he originally loaned the van to Oliver, there were no guns or ammunition of any kind in it. He further stated that he had no knowledge that the van contained guns and ammunition at the time the van was stopped and Oliver arrested, and, further, that the guns seized from the van were not his property. The Government also established that the revolver and ammunition had both been stolen at the same time just one month prior to Oliver's arrest.

On June 12, 1981, the jury returned a verdict of guilty on all four counts of the indictment. Post-trial motions were filed on June 16, 1981, and July 6, 1981. The latter motion was based on newly discovered evidence under Rule 33 of the Federal Rules of Criminal Procedure. Specifically, Oliver's counsel received a handwritten letter on June 30, 1981, from a man named Howard Beall. It read:

Dear Mr. Noll,

I am writing this to you regarding the conviction of a client of yours, John Oliver. I don't want to see an innocent man go to prison so I want to set the record straight. The guns the F.B.I. found in Julian Gabriel's van on the night of December 16, 1980 were mine. Mr. Oliver did *not* know that the guns (a .380 and a .38) were in the van. I borrowed the van that day and just left the guns in it. I am going to an attorney and have him make an affidavit of the truth. I am sorry that I put Mr. Oliver through all of this and I was wrong for not coming forward with the truth sooner. The reason being that I hate jail. I know that I still have a debt to pay to society but at least the record is straight and an innocent man will not go to jail. Well Mr. Noll, I'll close for now. I'll get an attorney as soon as I can and put this confession in legal form.

Very truly yours,

Howard Beall

At the bottom of the letter beneath Beall's signature were five fingerprints which would be shown to be Beall's. During his testimony at trial Oliver stated that earlier in the day on December 16, 1980, he had loaned the van to Beall. He also stated that another friend had been in the van with him several times that day. Oliver admitted on cross-examination that he noticed no guns or ammunition at the time each person left the van. At the hearing on his Rule 33 motion, Oliver reaffirmed his trial testimony that he had loaned the van to Beall earlier in the day on December 16, 1980. He further testified that in his efforts to locate Beall prior to trial, he spent two or three days going to several bars which Beall sometimes frequented. These efforts to locate Beall were unsuccessful. The district court denied Oliver's motion for a new trial on this ground. The other post-trial motions were likewise denied.

On July 27, 1981, the Government filed a motion pursuant to Fed.R.Crim.P. 46(e) seeking forfeiture of Oliver's post-trial

bond of $50,000 with a 10% cash provision. It contended that Oliver had violated a condition of the bond by traveling outside the Central District of Illinois to Fairmont, Illinois, where on July 9, 1981, he was arrested and charged with bank robbery. Oliver was acquitted on this charge on September 28, 1981.

Oliver was finally sentenced on August 19, 1981, to imprisonment for a period of five years on Count I. Imposition of a sentence on Counts II thru IV was suspended but Oliver was placed on probation for five years on each of these three counts to run concurrently with each other and consecutive to the five year imprisonment. Following Oliver's acquittal on the bank robbery charge, he filed a motion for the setting of an appeal bond. The Government strongly opposed the motion. On October 2, 1981, the district court denied Oliver's motion for an appeal bond primarily on the ground that Oliver posed a danger to the community.

### Beall Letter

■ In *United States v. Hedman*, 655 F.2d 813, 814 (7th Cir. 1981), this court set out the requirements for a new trial on the basis of newly discovered evidence under Fed.R.Crim.P. 33. The defendant must show that the evidence (1) came to their knowledge only after trial; (2) could not have been discovered sooner had defendants exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial. *See also United States v. Pappas*, 602 F.2d 131, 133 (7th Cir.), *cert. denied*, 444 U.S. 949, 100 S.Ct. 421, 62 L.Ed.2d 319 (1979). As recognized in *United States v. Curran*, 465 F.2d 260, 262 (7th Cir. 1972), these standards reflect the fact that such motions "are not favored by the courts and are viewed with great caution." *See also United States v. Davis*, 604 F.2d 474, 483 (7th Cir. 1979). Our review is limited to whether the district court abused its discretion. *Id.* The Government contends that Oliver has failed to satisfy the second and fourth requirements. We

fully agree. Let us first examine the diligence requirement.

■ It seems reasonable that Oliver would have made every effort to locate those persons who had driven the van or had been a passenger in the van on or shortly before December 16, 1980. His position was that someone else placed the guns and ammunition in the van, and that he had no knowledge they were there. Oliver had loaned the van to Beall earlier in the day. Logically, Beall becomes a prime target to question. But Oliver's efforts to locate Beall prior to trial were surprisingly few and limited, consisting only of stopping at a few bars which Beall was known to visit. No mention is made of attempting to locate Beall's home, place of employment, friends, family, relatives, etc. Oliver surely knew or could have known more about Beall than the bars he frequented but failed to utilize that knowledge. Furthermore, no subpoena was ever issued for Beall and no continuance was ever sought before or at trial to allow Oliver time to locate Beall. As the court stated in *United States v. Bryson*, 434 F.Supp. 986, 987 (W.D.Okl.1977), a defendant's "claim of diligence is seriously undermined by the failure of the defense to have a subpoena issued for the witness or to request a continuance on the basis of [the witness'] unavailability." That a state arrest warrant had been issued for Beall is essentially irrelevant in this instance. It was not issued until just three days prior to trial and nearly six months after Oliver was arrested on the firearms charges. Any claimed reliance by Oliver on police efforts to locate Beall pursuant to this warrant is therefore meaningless. For all these reasons, we conclude that Oliver failed to exercise due diligence in locating Beall prior to trial.

■ Whether the Beall letter would probably lead to an acquittal in the event of a new trial is a much more difficult question and one we need not address in light of our above holding. Even if it were necessary to address this requirement, we would be unable to conclude that the district court abused its discretion in denying Oliver's mo-

tion. Let us briefly explain. The letter mentions only the two guns found in the van. No mention is made of the ammunition. More importantly, the letter fails to explain how ammunition was found on Oliver's person which alone would be sufficient to support the conviction. Serious questions concerning trustworthiness and motive are also raised. Beall was a friend of Oliver's with whom Oliver spoke after he had been arrested. The nagging question is why did Beall not act at that time or soon thereafter rather than waiting until after the trial? A plausible answer is that Beall had nothing to do with the guns in the van and, therefore, there was nothing for him to admit before trial. Once Oliver was convicted, the letter may have been a final desperate attempt to exonerate his friend. Interestingly, Beall, a felon himself, did not come forward personally to make the admissions. There is no assurance that Beall would be willing to come forward and subject himself to thorough examination and cross-examination. There is also no indication that Beall has "put this confession in legal form" as promised in the letter. An aura of suspicion and doubt engulfs the Beall letter which makes it further improbable that Oliver would be acquitted in the event of a new trial.

### Illinois Firearm Owner's Identification Card

Oliver was prepared to present evidence at trial to show that under Illinois law, he was entitled to acquire and possess firearms and ammunition despite his status as a convicted felon. He essentially argues two points. First, that actions pursuant to the Illinois law are a valid defense to charges brought under the federal statute. Second, that he did not know he was violating any federal statute at the time of his arrest. We reject both arguments.

■ With respect to the latter argument, it is well established that specific intent or knowledge of the defendant that he is violating the law is not an essential element for a violation of 18 U.S.C. § 922(h) or 18 U.S.C. app. § 1202(a). *See United States v.*

*Holmes,* 594 F.2d 1167 (8th Cir.), *cert. denied,* 444 U.S. 873, 100 S.Ct. 154, 62 L.Ed.2d 100 (1979); *United States v. Houston,* 547 F.2d 104 (9th Cir. 1976). Instead, the "courts have consistently held that a defendant need only be shown to have knowingly received or possessed the firearm." *United States v. Sutton,* 521 F.2d 1385, 1391 (7th Cir. 1975). Thus, Oliver's second argument is completely without merit.

■ Oliver's first argument is more interesting but equally without merit. The court interprets it to be that the state created right to possession takes precedence over the prohibition of possession mandated by the federal statute. The significance of the Identification Card was addressed by this court in *Sutton*. We recognized there that 18 U.S.C. app. § 1203(2) provides that, in order for a convicted felon to be exempted from the absolute prohibition imposed by § 1202, two conditions must be met: (1) the felon must obtain a state or federal executive pardon of the underlying offense, and (2) the felon must receive an express authorization from the pardoning executive to receive, possess or transport a firearm in commerce. *Id.* at 1389. The defendant contended in part that the Identification Card satisfied the second requirement. We responded as follows:

We do not view Sutton's Illinois Firearm Owner's Identification Card as constituting such an express gubernatorial authorization. The gun card was issued automatically to Sutton after five years had passed from his last release from prison pursuant to an Illinois statute. No individual consideration was given as to whether, in light of the federal proscription of receipt, possession, or transportation of a firearm in commerce after conviction of a felony, Sutton was qualified to receive authorization. We do note with concern, however, the unfairness that may result when a state, which has enacted more limited gun control legislation than Title VII, issues to prior felons authorization to receive and possess firearms for state purposes while failing to

inform them of the independent and continuing federal proscription.

521 F.2d at 1389 n.8.

In this case, Oliver fails to satisfy both requirements under § 1203(2). He has received no pardon of the underlying offense nor any express gubernatorial authorization. As did the court in *Sutton*, we too recognize the unfairness created by the conflicting federal/state statutory scheme. But the plain language of the federal statute governs this criminal action and takes precedence over any other related state law. Congress has expressly provided exemptions to the federal statute and Oliver has failed to satisfy their requirements. We have no power to extend those exemptions or to create new exemptions where the Congress has spoken so clearly on this subject. For these reasons, we find no error in the district court's decision.

### Failure to Dismiss First Indictment

■ In his *pro se* brief filed in addition to that filed by his counsel, Oliver alleges prosecutorial misconduct in the Government's actions which resulted in the dismissal without prejudice of the first indictment. He suggests that the Government's actions were in response to his refusal to enter into a guilty plea agreement. No evidence is contained in his brief and none is found in the record to support this allegation. At oral argument, Oliver's counsel represented that his client's allegations were completely without foundation. We appreciate and accept that representation and reject Oliver's argument.

Oliver further argues in a conclusory manner that the delay between the dismissal of the first indictment and filing of the second constituted a denial of due process. However, he points to no specific prejudice suffered as a result of the mere ten-day delay. There is absolutely nothing in the record that would even remotely resemble prejudice to Oliver. A bare allegation of prejudice is insufficient.

### Probable Cause for Arrest Warrant

In *Bacon v. United States*, 449 F.2d 933 (9th Cir. 1971), the Court of Appeals for the Ninth Circuit held that the power to arrest and detain an individual as a material witness is "fairly inferable" from 18 U.S.C. § 3149 and pre-1972 Fed.R.Crim.P. 46(b). Section 3149 provides:

> If it appears by affidavit that the testimony of a person is material in any criminal proceeding, and if it is shown that it may become impracticable to secure his presence by subpoena, a judicial officer shall impose conditions of release pursuant to section 3146. No material witness shall be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and further detention is not necessary to prevent a failure of justice. Release may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

And prior to being amended in 1972, Rule 46(b) provided:

> If it appears by affidavit that the testimony of a person is material in any criminal proceeding and if it is shown that it may become impracticable to secure his presence by subpoena, the court or commissioner may require him to give bail for his appearance as a witness, in an amount fixed by the court or commissioner. If the person fails to give bail the court or commissioner may commit him to the custody of the marshal pending final disposition of the proceeding in which the testimony is needed, may order his release if he has been detained for an unreasonable length of time and may modify at any time the requirement as to bail.

Rule 46(b) was amended in 1972 to conform to the Bail Reform Act of 1966. *See Hurtado v. United States*, 410 U.S. 578, 579 n.1, 93 S.Ct. 1157, 1159 n.1, 35 L.Ed.2d 508 (1973). Oliver does not contend that this amendment extinguished the power to arrest established in *Bacon*. In fact, Oliver concedes that the court has the power to

issue a material witness arrest warrant. Rather, he challenges the propriety of the requirements set out in *Bacon* for the issuance of such a warrant. His argument merits our close attention.

In *Bacon*, the court held that a material witness arrest warrant must be based on probable cause, which under then Fed.R. Crim.P. 46(b) and § 3149, must be tested by two criteria: (1) "that the testimony of a person is material," and (2) "that it may become impracticable to secure his presence by subpoena." 449 F.2d at 943. The court went on to hold that "[i]n the case of a grand jury proceeding, we think that a mere statement by a responsible official, such as the United States Attorney, is sufficient to satisfy criterion (1)." *Id.* The court explained the reason for its holding as follows:

> This is because of the special function of the grand jury; it has exceedingly broad powers of investigation, and its proceedings are secret. *In re Dymo Industries, Inc.*, C.D. Cal., 1969, 300 F.Supp. 532, 533, aff'd for the reasons given by the district court, *United States v. Dymo Industries, Inc.*, 9 Cir., 1969, 418 F.2d 500, where we held that a showing of good cause is not required for the issuance of a grand jury subpoena *duces tecum. Cf. United States v. United States District Court*, 4 Cir., 1956, 238 F.2d 713, 719–720. We have also held that where a showing is being made in support of a proposed grant of immunity to a grand jury witness, the mere assertion by the United States Attorney that the investigation involves the applicable statute is enough. *Russo v. United States, supra*, 9 Cir., 1971, 448 F.2d 369, and cases cited. These principles, we think, are applicable here. We express no opinion as to what showing as to materiality must be made in the case of a witness who is to testify at a trial. *Id.*

Oliver challenges this aspect of *Bacon* and contends that in order to satisfy the materiality requirement, we should require that a factual basis be set forth in the materials submitted with the issuing judi-

cial officer. Representation by an Assistant United States Attorney that the witness is material is insufficient in Oliver's mind. He argues that the present requirement permits a much lower standard than that required for the issuance of a standard arrest warrant.

The problem with Oliver's facially appealing argument is its misunderstanding of the particularly unique powers and functions of a grand jury and the grave importance of secrecy with respect to all aspects of its investigatory processes. These elements were recognized in *Bacon* and retain their importance and applicability today. We believe requiring a materiality representation by a responsible official of the United States Attorney's Office strikes a proper and adequate balance between protecting the secrecy of the grand jury's investigation and subjecting an individual to an unjustified arrest. Requiring an articulation of the factual basis for materiality could jeopardize the secrecy of the grand jury's activities and precipitate responsive action by individuals who may be connected in some respect with the matter under investigation. This could result in the failure or frustration of the entire investigation. The subject of the warrant will, of course, always be able to challenge the propriety of the issuance of a warrant on the ground that the prosecutor knowingly presented a false representation of materiality. But Oliver does not contend that the representation of materiality was false or that a review of the grand jury's investigation itself shows that the representation was false. Like the court in *Bacon*, we too limit our holding to witnesses material to the functions of a grand jury. We express no view on the propriety of extending this rule to witnesses material to a trial, where the special concerns of the grand jury are not present.

### Sentencing Irregularities

As stated earlier, Oliver was convicted for the following:

Count I—receipt of ammunition (§ 922(h))

II—receipt of revolver (§ 922(h))

III—possession of revolver (§ 1202(a))

IV—possession of automatic handgun (§ 1202(a)).

He was sentenced to five years imprisonment on Count I. On Counts II thru IV, Oliver was sentenced to concurrent terms of five years probation which were to run consecutive to the sentence imposed for Count I. Oliver raises three challenges to the sentencing process which we will address separately.

 Counts I and II are based upon 18 U.S.C. § 922(h), which provides in pertinent part:

It shall be unlawful for any person—(1) ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

\* \* \* \* \* \*

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Oliver contends that the ammunition and revolver cannot support separate counts. He relies upon *United States v. Calhoun*, 510 F.2d 861, 869 (7th Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975), where we held "that absent a showing that two firearms were stored or acquired at different times or places, there is only one offense, not two...." Although *Calhoun* involved two firearms, Oliver contends that for purposes of § 922(h), firearms and ammunition are interchangeable.

Our decision in *Calhoun* followed from our earlier decision in *McFarland v. Pickett*, 469 F.2d 1277 (7th Cir. 1972). In that case, the defendant pled guilty to two counts of an indictment which charged him with concealing and storing stolen firearms in violation of 18 U.S.C. § 922(h). A separate gun was the basis for each count. The defendant challenged the propriety of the separate sentences imposed by the district court for each count. He relied upon the Supreme Court's decision in *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955). In *Bell*, the Court held invalid

separate sentences imposed upon a defendant after he pled guilty to a two-count indictment charging him with violations of the Mann Act, 18 U.S.C. § 2421, each count referring to a different woman. Not finding a clear expression of congressional intent to treat each transported woman as a separate offense, the Court declared that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes." 349 U.S. at 84, 75 S.Ct. at 622. In *McFarland*, the court found *Bell* applicable and concluded that the two counts alleged a single punishable offense. However, it added the exception regarding separate acquisition or storage which was the basis of our decision in *Calhoun* (interpreting 18 U.S.C. app. § 1202(a)(1)) and which governs this case. Numerous cases have followed the *McFarland/Calhoun* reasoning. *See United States v. Hodges*, 628 F.2d 350 (5th Cir. 1980); *United States v. Bullock*, 615 F.2d 1082, 1086 (5th Cir.), *cert. denied*, 449 U.S. 957, 101 S.Ct. 367, 66 L.Ed.2d 223 (1980) ("18 U.S.C. app. § 1202(a)(1) ... allows the government to treat each of several firearms not simultaneously received or possessed as separate units of prosecution."); *United States v. Mason*, 611 F.2d 49 (4th Cir. 1979); *United States v. Powers*, 572 F.2d 146 (8th Cir. 1978); *United States v. Killebrew*, 560 F.2d 729, 734 (6th Cir. 1977); *United States v. Rosenbarger*, 536 F.2d 715 (6th Cir.), *cert. denied*, 431 U.S. 965, 97 S.Ct. 2920, 53 L.Ed.2d 1060 (1976); *United States v. Kinsley*, 518 F.2d 665 (8th Cir. 1975).

The Government in this case failed to show that the ammunition and revolver were acquired at different times. Indeed, the evidence indicates that they were acquired at the same time when stolen during the burglary of a residence in Springfield, Illinois, approximately one month before Oliver's arrest. There is also nothing to suggest that these items were stored at different places. Agreeing with Oliver that for purposes of § 922(h), firearms and ammunition are interchangeable, we conclude

that *Calhoun* and *McFarland* are directly on point and that Oliver's actions underlying Counts I and II cannot stand as two separate offenses but only as one.

The Government argues that the court should reexamine *Calhoun* in light of the Supreme Court's recent decision in *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In that case, the Court held that conspiracy to import marihuana and conspiracy to distribute marihuana were separate and distinct offenses. We do not find *Albernaz* to be in any way inconsistent with *Calhoun*. Two separate statutes were involved in *Albernaz* and there was no indication that Congress did not intend conduct violative of each statute to be treated as a distinct offense. Here, on the other hand, there is a single statute and no indication that Congress intended firearms and ammunition to be treated as separate violations. By including both in the same statute and by the language of "firearm or ammunition," it is very clear that they are not to be treated separately. A plain reading of the statute leads to no other conclusion. Quoting again from the Supreme Court's decision in *Bell*, "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses . . . ." 349 U.S. at 84, 75 S.Ct. at 622. *See also United States v. Bass*, 404 U.S. 336, 347–49, 92 S.Ct. 515, 522–23, 30 L.Ed.2d 488 (1971). This principle is most applicable in this instance. For these reasons, we affirm *Calhoun* and *McFarland* and find they govern this case. Receipt of ammunition and receipt of the revolver may not stand as separate offenses.

▮ With respect to Counts III and IV, an adequate showing has been made that the revolver was acquired at a different time than the automatic handgun. While not clearly established where the automatic handgun had been obtained, it is established that it was not taken in the robbery during which the revolver was obtained. Thus, the acquisition exception in *Calhoun* and *McFarland* applies and the two counts may stand as such.

▮ The third argument raised by Oliver concerns Counts II and III. He contends that receipt of a firearm and possession of the same firearm require the same elements of proof and as such constitute only one criminal act for which he can be sentenced. While not citing it himself, there is authority for his argument, at least to the extent that one cannot be convicted under both § 922(h) and § 1202(a) where the same conduct is involved. *See United States v. Larson*, 625 F.2d 67 (5th Cir. 1980); *United States v. Girst*, 645 F.2d 1014 (D.C. Cir.1979). The Government, again relying on *Albernaz*, argues that receipt and possession are separate offenses. A case holding such is *United States v. Larranaga*, 614 F.2d 239 (10th Cir. 1980).

In light of our previous holdings with respect to the sentencing irregularities, there is no need for this court to address this issue. The five year imprisonment followed by a five year probation period would stand regardless of our decision. Count I would continue to support the imprisonment sentence and Count IV would continue to support the probation sentence. Finding Counts II and III multiplicious would have no impact on the total sentence. *See United States v. Kimberlin*, 675 F.2d 866 (7th Cir. 1982). For this reason, we will not attempt to decide this issue.

### Appeal Bond

▮ In his request for the setting of an appeal bond, Oliver stressed three factors. First, that he was previously on an appeal bond for his 1969 conviction and surrendered himself voluntarily to the court when the bond was recalled. Second, that throughout the pending case, he voluntarily appeared in court whenever required. Third, that he would be gainfully employed while awaiting the hearing on his appeal.

The Government opposed Oliver's motion on a number of grounds. It noted the dangerous nature of the conviction involving firearms. While Oliver was acquitted of the bank robbery charge, the Govern-

ment argued that the district court should nevertheless consider the evidence in that case as additional indication of Oliver's danger to the community. It reminded the court that the bank robbery occurred while Oliver was free on bond pending sentencing. The Government also pointed out that Oliver had no ties to the Central District, had not been employed while previously on bond and had violated the travel restrictions on his post-trial bond. Oliver was also the apparent subject of another criminal investigation involving armed robbery.

The district court entered a written order on October 2, 1981, denying the motion. In that order, the court recited numerous reasons for believing that, if released, Oliver would pose a threat to the community and might flee. The court stated:

It appears that no conditions of release will assure that defendant will not pose a danger to the community. Defendant, a prior felon, was convicted for possession of a firearm. This is a serious offense with potentially violent overtones. Defendant has been sentenced to five (5) years in prison with five (5) years of probation to commence upon the expiration of any parole supervision.

Defendant's own testimony indicates that he has not been gainfully employed for approximately 1½ to 2 years. It also established that he supports himself by gambling. His friends and associates, by his own testimony, are not choirboys and, in fact, are people who are involved in crime.

Moreover, while on appearance bond pending sentencing, defendant was arrested and subsequently indicted for bank robbery. While the jury acquitted him of those charges, this Court views that acquittal as reluctance to find proof beyond a reasonable doubt and convict on the basis of circumstantial evidence, rather than indicating a belief that the defendant was innocent. This Court heard the evidence, and the circumstantial evidence that defendant robbed the bank was strong. He was arrested when he placed a bet with bait money. He was identified by several bank employees at a lineup.

While this Court is bound by the jury's verdict, a preponderance of the evidence suggests that defendant did indeed commit the bank robbery. From this conclusion, it follows that this Court cannot in good conscience release defendant on bond pending appeal.

Moreover, the Court is informed that defendant is the subject of an investigation into a $500,000 armed robbery of a jewelry store in California. The district attorney in California plans to seek an indictment of Mr. Oliver, based upon a lineup identification of him as the robber. The Government persuasively contends that these circumstances offer great incentive for the defendant to flee. While concurring that there is an incentive for defendant to flee, this Court hesitates to deny bail upon that ground, since Mr. Oliver has been fairly responsible in making his required court appearances.

Accordingly, this Court finds that defendant has been convicted of a serious offense involving a dangerous weapon; his personal life is unstable and his cohorts range from petty to serious criminals; despite his jury acquittal, the circumstantial evidence that defendant committed the Decatur armed robbery is very strong; and, he potentially faces armed robbery charges in California. Under these circumstances, the Court is compelled to deny bail to Mr. Oliver pending his appeal, because of the danger he poses to the community. Consequently, the motion for appeal bond is denied.

At the outset of our discussion, it would be valuable to set forth the several statutory and procedural provisions relevant to this issue. Rule 46(c) of the Federal Rules of Criminal Procedure provides:

Eligibility for release pending sentence or pending notice of appeal or expiration of the time allowed for filing notice of appeal, shall be in accordance with 18 U.S.C. § 3148. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.

Section 3148 of Title 18 provides:

A person . . . who has been convicted of an offense and . . . has filed an appeal

... shall be treated in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained. The provisions of section 3147 shall not apply to persons described in this section: *Provided,* That other rights to judicial review of conditions of release or orders of detention shall not be affected.

And § 3146(b) specifies various factors which the court is to take into consideration.

> In determining which conditions of release will reasonably assure appearance, the judicial officer shall, on the basis of available information, take into account the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of his residence in the community, his record of convictions, and his record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings.

Rule 9(b) of the Federal Rules of Appellate Procedure provides that "[a]pplication for release after a judgment of conviction shall be made in the first instance in the district court." In reviewing the district court's decision, a court of appeals is free to make an independent determination on the merits of the prisoner's application. *United States v. Provenzano,* 605 F.2d 85, 92–93 (3d Cir. 1979). However, the district court's conclusion is entitled to "great deference." *Harris v. United States,* 404 U.S. 1232, 92 S.Ct. 10, 30 L.Ed.2d 25 (1971); *United States v. Gigax,* 605 F.2d 507, 514 (10th Cir. 1979); *Provenzano,* 605 F.2d at 91–92. Reviewing the district court's written order and its oral statements at the hearing on this issue, and independently reviewing the relevant portions of the record, we too con-

clude that Oliver was not entitled to be released on bail pending his appeal.

There are several reasons underlying our decision, each of which is discussed or noted in some manner by the district court. The decisive factor in our opinion is whether Oliver may have fled. Oliver had already violated the conditions on his bond pending sentencing by leaving the Central District. This is strong evidence on a defendant's potential to flee. The record also indicates that Oliver had no record of employment and that his primary source of income was gambling. While released on bond pending sentencing, Oliver failed to gain any employment. Under these circumstances, it would be difficult to believe that any conditions could be imposed to remove this risk of flight. The district court was also informed that Oliver was a suspect in the armed robbery of a jewelry store in California and that state prosecutors there intended to seek an indictment against him on those charges. What a great incentive this is for Oliver to flee. Already convicted for one crime, what reason is there for him not to attempt to avoid prosecution for the other crime which carries a far greater potential sentence.

■ The factors concerning Oliver's danger to the community, while not as compelling as those concerning the potential for flight, are equally forceful. Even though acquitted on the Illinois bank robbery charges, the evidence in that case can be taken into consideration. And that evidence does raise some concern that Oliver may have been at least in some way involved in that crime. Furthermore, while convicted only for possessory offenses, the nature of the offenses nevertheless encompasses a potential danger to human life. *See United States v. Blyther,* 407 F.2d 1279, 1280 (D.C.Cir.) (Fahy, J.), *cert. denied,* 394 U.S. 953, 89 S.Ct. 1296, 22 L.Ed.2d 488 (1969). It seems all too obvious that possession of a firearm is the first necessary step in its use. In the hands of an individual with a criminal background as Oliver, the risk that the firearm might be put to use is

unacceptably high. The risk that Oliver might take other action dangerous to human life is equally unacceptably high. Oliver is a two-time loser in the criminal justice system with the possibility of a third loss looming. Desperate would be a fair characterization of Oliver's present status. It would be irresponsible for this court to allow Oliver freedom pending appeal under these circumstances. We are simply not prepared to assume responsibility for the risk to the community that Oliver's release would create. For all these reasons, we find an appeal bond is properly denied in this case.

Affirmed.