**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2007
Decided August 8, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-3937

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 05 CR 27 |
| REGINALD GUICE, *Defendant-Appellant.* | Samuel Der-Yeghiayan, *Judge.* |

**O R D E R**

A jury found Reginald Guice guilty of two separate counts of possessing firearms after having been convicted of a felony, *see* 18 U.S.C. § 922(g)(1), and the district court sentenced him to two concurrent 100-month terms of imprisonment. On appeal Guice challenges only one of those convictions. We affirm.

**I**

After Chicago police officers recovered handguns from his automobile, Guice was indicted on two counts of violating § 922(g)(1)—one count for a handgun on which he was sitting in the passenger compartment, and another for three handguns found in the trunk. He also was indicted on two counts of possessing firearms that had the manufacturer's serial number removed. *See* 18 U.S.C. § 922(k). Guice exercised his right to be tried by a jury, and after he stipulated that

he had at least one prior felony conviction, the government presented the following evidence.

Police Officers Steven Cieciel and Mario Acosta were patrolling the Garfield Park neighborhood in western Chicago, Illinois, during the early morning hours of July 1, 2003, when they saw a gold Chrysler Cirrus heading the wrong way down a one-way street directly toward their squad car. The officers decided to stop the Cirrus and activated their squad car's emergency lights; in response the driver of the Cirrus abruptly stopped, reversed quickly, "fishtailed," turned down an intersecting street, and sped off. The officers gave chase, and the Cirrus and its two occupants zoomed "recklessly" through the residential neighborhood. The chase ended just a couple of blocks later when the Cirrus pulled into a parking lot located at the end of a dead-end street. The driver of the Cirrus jumped out of the car before it came to a complete stop and fled into the Chicago Housing Authority development adjoining the parking lot, while the passenger remained inside the automobile. The officers got out of their squad car, with Cieciel pursuing the fleeing driver and Acosta staying behind to secure the Cirrus.

Officer Acosta approached the passenger side of the Cirrus with his gun drawn and ordered the passenger—who was later identified as Guice—to raise his hands and exit the automobile. Guice raised his hands in response, and Acosta waited for Officer Cieciel to return before ordering Guice to exit the car. Cieciel returned a few moments later and informed Acosta that he had lost the driver in the nearby housing development. Acosta then ordered Guice out of the car, but Guice responded that he was unable to comply because he could not walk without a cane. With Cieciel acting as back up, Acosta reached into the Cirrus to pat down Guice while he sat in the car; the search revealed a loaded handgun concealed under Guice's thigh.

Officer Acosta seized the handgun and arrested Guice. The officers informed Guice of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and asked him to identify the driver of the Cirrus. Guice responded that he did not know the driver and, moreover, did not know what was going on because "he was asleep" during the car chase. With Guice detained in the squad car, the officers searched the Cirrus and recovered from its trunk three additional handguns that had been concealed in the car's spare tire; the serial numbers had been removed from three of the four total handguns recovered. Upon further questioning Guice again denied knowing the driver, reiterated that he slept through the car chase, and asserted that he did not know from where the four guns came. Guice did volunteer, however, that recently he was the victim of a shooting in a nearby neighborhood and that he had sustained injuries that required him to wear a colostomy bag. Later investigative work revealed that Guice owned the Cirrus, having purchased it recently from an automobile dealership.

After the government rested its case, Guice moved for an acquittal on the basis that the government had not sufficiently proved that he possessed all of the handguns found in the Cirrus. *See* Fed. R. Crim. P. 29(a). The district court denied the motion, and Guice proceeded to present his sole witness, Kenyatta Williams, who lived in the housing development adjoining the parking lot where Guice was arrested. Williams testified that she knew Guice through her boyfriend, Keith Michaels, who served as Guice's driver because Guice's injuries prevented him from driving himself. In return for acting as his driver, Guice allowed Michaels to drive his Cirrus whenever Michaels wanted. Williams stated that Michaels visited her at her apartment a few hours before Guice was arrested, and that at that time he was driving Guice's Cirrus alone. She also stated that in the early morning hours of July 1, Michaels showed up at her apartment "[n]ervous, scared, and panicky."

At the close of evidence the district court met with the parties regarding the jury instructions. Defense counsel proposed to add this instruction: "A defendant's mere presence, in the proximity of firearms, without more, is insufficient to show possession of those firearms. A defendant's mere association with those who may have possessed firearms is insufficient to show possession." The district court declined to provide the proposed instruction, explaining that it was not supported by "the totality of the case." Instead, the court gave this instruction on the definition of "possession":

> Possession of an object is the ability to control it. Possession may exist even when a person is not in physical contact with the object but knowingly has the power and intention to exercise direction or control over it either directly or through others. A person need not own an object to possess it.

> Possession may be sole possession or joint possession. If one person alone has possession of an object, he has sole possession of the object. If two persons share possession of an object, the persons have joint possession of the object. It does not matter that the other individual may have had access to an area where an object was possessed nor does it matter that the other individual shared the ability to exercise control over the object.

> If you find beyond a reasonable doubt that the defendant had possession over the object either solely or jointly with others, you should find that the defendant possessed the object. . . .

> [T]he government must prove beyond a reasonable doubt that the defendant knowingly possessed at least one of the firearms alleged in

> Count Three [involving the handguns found in the trunk] and you must unanimously agree upon which firearm or firearms alleged in Count Three that the defendant knowingly possessed.

The court further instructed the jury that "[i]t is the defendant's theory of defense that on July 1, 2003, another person, and not the defendant, possessed the firearms found in the automobile in which the defendant was a passenger."

The parties presented closing arguments after the district court instructed the jury. The government argued that the evidence established that Guice possessed the handguns found in his Cirrus, either solely or jointly with Michaels. Guice, on the other hand, asserted that the guns were Michaels's only, and that without his knowledge Michaels had hid the guns in the Cirrus while driving the car alone earlier in the night. Thus, Guice contended, he could not be held responsible for the guns.

The jury found Guice guilty on both § 922(g)(1) counts, but it acquitted him of the two counts of possessing firearms that had the manufacturer's serial number removed. Before sentencing, Guice filed a series of post-verdict motions, again challenging the sufficiency of the evidence showing that he possessed all four handguns, and also arguing that the district court erred by not adopting his proposed "mere-presence" jury instruction. The court rejected both arguments, entered convictions on both possession counts, and sentenced Guice to two concurrent terms of 100 months' imprisonment.

## II

On appeal Guice does not challenge his conviction for possessing the handgun found under his thigh. Instead he renews his argument that the evidence did not establish that he possessed the three handguns recovered from the trunk of his Cirrus. Guice also contends that the trial court erred by refusing to adopt his proposed "mere-presence" jury instruction.

Before we address Guice's arguments, however, we take a slight detour. At oral argument we asked the government whether the district court violated Guice's right to be free from double jeopardy by entering separate judgments of conviction on the two handgun-possession counts, when the handguns were all recovered from Guice's Cirrus and there was no evidence suggesting that he acquired the guns at separate times. *See United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002); *United States v. Buchmeier*, 255 F.3d 415, 423 (7th Cir. 2002); *United States v. McKinney*, 919 F.2d 405, 418 (7th Cir. 1990). In a supplemental submission the government responded that the separate convictions were justified because Guice stored the handguns in "two separate and distinct places" in his car—in the

passenger compartment and in the trunk. This argument fails to come to grips with the holdings of other cases, in which courts have found that a defendant did exercise control over two different areas in the same apartment, or the same vehicle. *See United States v. Ankeny*, No. 05-30457, 2007 U.S. App. LEXIS 14350, at *6, 20 (9th Cir. June 19, 2007) (holding that only one § 922(g)(1) conviction was warranted when one gun was found under cushion in chair in living room, second gun was recovered on adjacent chair, third and fourth guns were found in closet in upstairs bedroom, and fifth gun was located in basement); *United States v. Dunford*, 148 F.3d 385, 387, 389-90 (4th Cir. 1998) (holding that only one § 922(g)(1) conviction was supported when police recovered five guns from inside mattress in one bedroom, an ammunition clip from top of the bed, another rifle from inside mattress of another bed, and ammunition from another bedroom); *United States v. Oliver*, 683 F.2d 224, 226, 232-33 (7th Cir. 1982) (stating that firearms and ammunition were stored in same place in van for purpose of one § 922(g)(1) conviction when FBI agent found one handgun on the floor of passenger seat, another gun and ammunition under driver's seat, ammunition in ashtray, and ammunition in defendant's pants pocket); *cf. United States v. Gann*, 732 F.2d 714, 717, 721 (9th Cir. 1984) (concluding that firearms were stored separately when one was recovered from defendant's vehicle and other was found in residence). We see no material difference between those cases and this one, and thus we conclude that the district court should not have entered two separate convictions for the two sets of guns.

This alone, however, is not enough to permit Guice to prevail. He failed to raise the double jeopardy issue before the district court and thus he bears the burden of showing that the entry of the two § 922(g)(1) convictions was plain error and resulted in a "miscarriage of justice." *See United States v. Van Waeyenberghe*, 481 F.3d 951, 958 (7th Cir. 2007); *United States v. Baldwin*, 414 F.3d 791, 796 (7th Cir. 2005). This he cannot do; the entry of multiple convictions merely resulted in the imposition of an additional concurrent sentence and corresponding $100 special assessment, consequences that we have deemed not serious enough "to be described as a miscarriage of justice and thus ... plain error." *Baldwin*, 414 F.3d at 796 (internal quotation marks and citation omitted); *see also United States v. McCarter*, 406 F.3d 460, 464 (7th Cir. 2005) (stating that plain error did not exist because future effect of second conviction was too "speculative," and imposition of extra special assessment "trivial").

With that said, Guice's challenges to his handgun-possession conviction are meritless. Guice faces "a nearly insurmountable hurdle" when challenging the sufficiency of the evidence underlying his conviction for possessing the handguns recovered from the trunk of his Cirrus. *See United States v. Jackson*, 177 F.3d 628, 630 (7th Cir. 1999). We view the evidence presented at trial in the light most favorable to the government, *United States v. Stevens*, 453 F.3d 963, 965 (7th Cir.

2006), and will "overturn a verdict only when the record contains no evidence, regardless of how it is weighed," from which a jury could conclude beyond a reasonable doubt that Guice is guilty, *United States v. Gougis*, 432 F.3d 735, 743-44 (7th Cir. 2005) (internal quotation marks and citation omitted).

The evidence comfortably supports Guice's conviction. As pertinent here, at trial the government bore the burden of showing that Guice possessed the firearms in the trunk. *See* 18 U.S.C. § 922(g)(1); *United States v. Allen*, 383 F.3d 644, 646-47 (7th Cir. 2004). The government did not need to show that Guice actually possessed the handguns; constructive possession was enough, which the government could prove by showing that Guice had "the power and intent to exercise control" over the handguns "either directly or through others." *Stevens*, 453 F.3d at 965-66; *see also United States v. Thomas*, 321 F.3d 627, 636 (7th Cir. 2003). At trial the government established that Guice had the power and intent to control the handguns found in the trunk based on the evidence that he (1) owned the Cirrus in which the handguns were recovered; (2) was present in his Cirrus when the handguns were recovered; and (3) controlled who had access to his Cirrus. *See United States v. Parra*, 402 F.3d 752, 762 (7th Cir. 2005) ("[W]e have found possession with intent to distribute a controlled substance when the defendant denied knowledge of drugs that were located in the car that she was driving or in which she was a passenger."); *United States v. Covarrubias*, 65 F.3d 1362, 1369-70 (7th Cir. 1995); *cf. United States v. Harris*, 325 F.3d 865, 869-70 (7th Cir. 2003) (holding evidence sufficient to find defendant guilty of possessing drugs where drugs were found in defendant's home, even though defendant claimed that she was not aware of drugs); *Thomas*, 321 F.3d at 636 ("[W]here we have found constructive possession of firearms when they are found in close proximity to the defendants, the weapons were found in areas over which the defendant exercised control, such as a bedroom, garage, or workplace." (citations omitted)); *United States v. Kitchen*, 57 F.3d 516, 521 (7th Cir. 1995) ("Constructive possession can be established by a showing that the firearm was seized at the defendant's residence." (internal quotation marks and citation omitted)). Guice's sufficiency-of-the-evidence argument therefore fails.

Equally unavailing is Guice's argument that the district court erred by not using his proposed "mere-presence" jury instruction. To challenge the district court's refusal to provide his proposed instruction successfully, Guice must show, among other things, that the instruction was supported by "evidence consistent with a theory of mere presence." *United States v. Glover*, 479 F.3d 511, 519 (7th Cir. 2007); *see also United States v. Al-Shanin*, 474 F.3d 941, 947 (7th Cir. 2007). This means that Guice must point to evidence suggesting that he "was standing around while others engaged in criminal activity." *Glover*, 479 F.3d at 519. Guice was not entitled to have his particular proposed instruction presented to the jury; rather, he was entitled only to have his theory of defense presented. *See Al-Shanin*, 474 F.3d at 947. Thus, even if the proposed instruction was supported by evidence, the

district court did not need to provide the exact instruction Guice proposed if the proposed instruction's "essential points are covered in another instruction" and the jury instructions, viewed as a whole, adequately conveyed his theory of defense. *United States v. Manjarrez*, 258 F.3d 618, 626 (7th Cir. 2001); *see also United States v. Robinson*, 96 F.3d 246, 251-52 (7th Cir. 1996). We review the district court's decision not to provide Guice's proposed instruction for abuse of discretion. *See United States v. Van Sach*, 458 F.3d 694, 702 (7th Cir. 2006).

Contrary to Guice's assertion, the evidence presented at trial was not consistent with a "mere-presence" instruction. Rather, the evidence showed that not only was Guice present where the firearms were seized, but also that he (1) owned the Cirrus in which the guns were found; (2) rode in the car as a passenger; (3) controlled who had access to and drove the automobile; (4) literally "went along for the ride" when the person he commissioned to drive his automobile decided to lead police officers on a high-speed chase; (5) incredibly claimed that he did not know the person who was driving his car when fleeing from the police; and (6) was *sitting on* a loaded handgun. Such evidence hardly established that Guice was merely "standing around while others engaged in criminal activity." *Glover*, 479 F.3d at 519; *see also United States v. Claxton*, 276 F.3d 420, 424 (8th Cir. 2002) (holding "mere-presence" instruction was not supported by evidence where defendant "was a passenger in an automobile from the right front window of which a shotgun was disposed of as a police officer approached"); *United States v. Linwood*, 142 F.3d 418, 424 (7th Cir. 1998). Thus, the district court cannot be faulted for omitting Guice's "mere-presence" instruction.

We further note that the district court's jury instructions encompassed the essential elements of Guice's theory of defense and his proposed "mere-presence" instruction. After the court thoroughly instructed the jury on the different ways in which it could find that Guice possessed the handguns found in the Cirrus's trunk, it stated that Guice's theory of defense was that "another person, and not [Guice], possessed the firearms found in the automobile in which [he] was a passenger." These instructions covered the central theory underlying Guice's defense and proposed instruction: that Michaels, and not he, solely possessed the handguns found in the trunk, and that his own proximity to the guns in the trunk and association with Michaels alone could not establish that he possessed those guns. Guice thus cannot quarrel with the district court's refusal to provide the specific instruction he proposed. *See Manjarrez*, 258 F.3d at 626; *United States v. Koster*, 163 F.3d 1008, 1011 (7th Cir. 1998); *see also United States v. Rice*, 995 F.2d 719, 725 (7th Cir. 1993) ("We have rejected the contention that possession instructions must include a qualifier that 'mere proximity' is not possession.").

AFFIRMED.