**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Stanley WRIGHT, Defendant–Appellant.**

**No. 89–2581.**

United States Court of Appeals, Seventh Circuit.

Argued March 2, 1990.

Decided April 16, 1990.

Stephen P. Sinnott, William V. Gallo, Asst. U.S. Atty., Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Gerald J. Collins, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, POSNER, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

A jury found Stanley Wright guilty of two counts of distributing cocaine and two of distributing it within a thousand feet of a school. 21 U.S.C. §§ 841(a)(1), 845a. The judge sentenced him to seven years in prison. The principal question raised by the appeal is whether the trial was contaminated by evidence of other criminal activity by Wright.

On two different days in May 1988, three plainclothes police officers bought a total of four bags of "crack" at $20 a bag from a man who sold it to the officers at curbside on a Chicago street a few blocks from Hyde Park, handing the bags through the window of the unmarked police car. The sales occurred in daylight, and from police photographs the officers identified the man as Stanley Wright. No arrest was made, however, and instead the police waited six months and then with court authorization placed a wiretap on Wright's telephone line in November 1988. The tap intercepted a conversation between Wright and an unidentified woman in which Wright bragged about being a drug dealer. At trial, over Wright's objection, the judge let the government play a tape recording of portions of the conversation to the jury. In addition to challenging this ruling, Wright argues that no rational jury could have

found him guilty beyond a reasonable doubt; but that argument has no possible merit. The three officers identified Wright in court as the man who had sold them the drugs, and while there were discrepancies between their descriptions of the man and Wright's actual appearance (they thought he was considerably taller and heavier than he is), these discrepancies do not invalidate the identification, especially since, as the officers testified, it is difficult to gauge a person's height and weight from inside a car.

Wright did not admit in the recorded conversation making the sales—which had occurred six months earlier—that he is charged in this case with having made. He did admit committing other drug crimes. The admissibility of evidence of other crimes is governed by Rule 404(b) of the Federal Rules of Evidence, which provides that such evidence may not be used to prove a person's bad character or his propensity to commit crimes in conformity with that character, but may be used "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake or accident." The judge admitted the conversation to establish identity and intent, and told the jury to limit their consideration of the conversation to those issues. There was, however, no issue of intent in this case—no question, for example, whether Wright knew what was in the packages that he sold the plainclothes officers. So the jury, if it obeyed the judge's instructions, could have used the recorded conversation only in connection with the issue of identity, that is, only to help decide whether Wright was the man who had sold the crack to the plainclothes officers.

By "identity," the district judge must have meant "guilt," and that is an impermissible equation. *Hirst v. Gertzen*, 676 F.2d 1252, 1262 (9th Cir.1982). The intercepted telephone conversation may well show that Wright is more likely to be guilty of the crime with which he is charged than the average man on the street, who is not a drug dealer, but it does not in the least show that the man who had sold the plainclothes officers four bags of crack six months earlier was correctly identified as Stanley Wright. It would tend to show this if for example the conversation had indicated that Wright was at that time selling drugs on streets near where the transactions occurred, or if he had said something that only a party to those transactions would know. *United States v. Zapata*, 871 F.2d 616, 621 (7th Cir.1989). The conversation indicated neither of these things. If anything, it tended to show that Wright was *not* the man who had sold drugs at curbside to the officers, because, in the very passage that the government at argument told us was the strongest proof of identity, Wright had said (emphasis added):

> It's not as easy as everybody think it is, cause it it's the money is good, but it's a big hassle behind it because you got to set up, you got to get the stuff, you got to you got to cook it, you got to bag it, *and then you got to find somebody to sell it,* and then you gotta keep up with what *they* come short, and what *they* don't come short, *and you gotta worry about them getting caught* and this and that and the other, *you gotta worry about if they gonna tell if they get caught.*

Wright portrays himself as a *wholesale* dealer. He does not sell the stuff at retail himself; he hires other people to sell it, and then he has to worry about their getting caught and tattling on him. True, the passage we have quoted is far from conclusive against his guilt. Just as the executives of a department store might in a pinch help out the salesmen on the floor, so a wholesale dealer might in a pinch make a few sales at retail. And Wright may have been exaggerating his importance as a drug dealer to impress the woman on the other end of the line. Consistent with this inference is the fact that Wright has not been charged with any offenses committed after the sales at issue in this case, even though, taken at face value, the recording suggests that he is not merely a curbside retail dealer but a drug middleman, whom the government could put away for longer than seven years. Another possibility is that

Wright may have graduated from retail seller to wholesale distributor during the six-month interval between the sales for which he was prosecuted and the taped conversation. The tape does not exonerate him, but neither does it clarify any ambiguities attending his identification by the police officers.

The only relevance of the tape was to depict Wright as a drug dealer (and a brazen and boastful one at that), and, against this, the limiting instruction was not limiting at all. It told the jurors that they could consider the tape for what light it cast on the identity and intent of the man who had sold crack to the officers. The implication was that a drug dealer is more likely than someone who is not a drug dealer to sell drugs, even if at a different level of distribution from his accustomed one. No doubt this is true. "The inquiry [into previous criminal acts] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Michelson v. United States*, 335 U.S. 469, 475–76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948) (footnote omitted). The logic of the district court's ruling is that a drug defendant's prior drug convictions are admissible per se, even if they do not help to clear up a question of identification or establish a modus operandi or otherwise illuminate the particular conduct of which the defendant is accused, and even if he does not take the stand, which would lay him open to being impeached by his prior convictions. The use of evidence of other crimes to establish a propensity to commit the type of crime charged is the use of such evidence that Rule 404(b) forbids.

Some of that evidence has no probative value at all. If Wright were accused of a criminal violation of the securities laws, the fact that he may once have been found guilty of child molestation would not increase the probability that he was guilty of the securities offense. To exclude such evidence, however, Rule 404(b) is not necessary; irrelevant evidence of any kind is made inadmissible by Rules 402 and 403. *United States v. Harrod*, 856 F.2d 996, 999

(7th Cir.1988). The purpose of Rule 404(b) is to exclude a type of evidence—evidence that the defendant had previously engaged in a broadly similar criminal activity—which has some probative value but the admission of which would tend as a practical matter to deprive a person with a criminal record of the protection, in future prosecutions, of the government's burden of proving guilt beyond a reasonable doubt. As Justice Jackson pointed out in *Michelson*, a jury is not likely to insist on the government's satisfying so demanding a standard of proof if the defendant is a thoroughly bad sort who even if not clearly guilty of the crime with which he is charged is no doubt guilty of some similar crime or crimes for which he may never have been caught or, if caught, may not have been punished adequately.

This case is governed by *United States v. Beasley*, 809 F.2d 1273 (7th Cir.1987), where evidence of dissimilar drug dealing was held inadmissible under Rule 404(b). See also *United States v. Hudson*, 843 F.2d 1062, 1066–67 (7th Cir.1988). While seeking to distinguish *Beasley*, the government's lawyer admitted at argument that the government disagrees with that decision. It believes that evidence of other crimes should be admissible if relevant, and it is relevant if the other crime is of the same general character (e.g., trafficking in cocaine) as the crime with which the defendant is charged. Acceptance of this argument would erase Rule 404(b).

The government's back-up argument that the admission of the tape was, if error, a harmless one because the three officers positively identified Wright has no merit. Identification evidence is not infallible, and police officers are not disinterested witnesses. If the government's case were as airtight as the government now says it is, one wonders why it pressed so hard for the admission of the recorded conversation.

The judgment is reversed with instructions to grant the defendant a new trial.

Reversed.