983 F.2d 1058
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Derek Marquis FLEMING, Defendant-Appellant.
 No. 92-5045.
 United States Court of Appeals,
Fourth Circuit.
 Argued: December 4, 1992
Decided: January 22, 1993
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Richard C. Erwin, Chief District Judge. (CR-91-179)
 James G. Middlebrooks, SMITH, HELMS, MULLISS & MOORE, Charlotte, North Carolina, for Appellant.
 Paul Alexander Weinman, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before WIDENER, HALL, and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Derek Fleming was convicted of (1) conspiracy to distribute cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; (2) inducing a minor to participate in a drug conspiracy in violation of 21 U.S.C. § 861(a)(1); and (3) possession of a firearm during a drug trafficking offense in violation of 18 U.S.C. §§ 924(c)(1) and (2). Fleming appeals, arguing that the district court erred by admitting evidence of prior drug sales and improperly calculating the weight of drugs ascribed to the conspiracy for sentencing purposes. We affirm.
 
 I.
 
 2
 Derek Fleming and Antuan Marsh entered into a conspiracy to operate a "crack house" from an apartment on Martin Luther King Drive in Greensboro, North Carolina. Fleming and Marsh purchased the crack and then gave it to Ronald Smith, a 16 year old minor. Smith sold crack to walk-in customers at the apartment and was paid between $200 and $300 dollars per week.
 
 
 3
 On May 23, 1991, Greensboro police officers arrested Smith and searched the apartment. They found 52 grams of crack, a pistol, and a Mossberg shotgun. Drug paraphernalia was scattered around the apartment, and, in the closet, the police found an army jacket with Fleming's name on it. Fleming and Marsh were arrested and indicted.
 
 
 4
 At trial, the government attempted to prove Fleming's participation in the conspiracy by offering Marsh's and Smith's testimony that Fleming was a co-conspirator, the physical evidence from the crack house, and evidence that Fleming had previously dealt drugs.
 
 
 5
 The jury found Fleming guilty of all three counts. He was sentenced to 322 months of imprisonment to be followed by 60 months of supervised release. Fleming appeals.
 
 II.
 
 6
 The indictment charged Fleming and Marsh with conspiring to distribute crack from April to June, 1991. At trial, the government also introduced, through the testimony of four Greensboro police officers, evidence that Fleming had sold crack on two prior occasions.[1] The district court's decision to admit "other acts" evidence pursuant to Fed. R. Evid. Rule 404(b) is reviewed by this court for "abuse of discretion." United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988).
 
 
 7
 A.Admissibility Under 404(b).
 
 
 8
 Before admitting evidence of prior bad acts under Rule 404(b) the district court must determine that the evidence comes within one of Rule 404(b)'s permitted uses, and, if so, that the evidence's prejudicial impact will not substantially outweigh its probative value. Rawle, 845 F.2d at 1247; Fed. R. Evid. Rule 403. The version of Rule 404(b) in effect at the time of Fleming's trial provided:
 
 
 9
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 10
 In admitting the officer's testimony regarding the September incident, the district court stated, "[I]t is admitted for the purpose to show that with reference to drugs, prior experience shows motive, opportunity, intent, preparation, planning, knowledge, identity, absence of mistake...." The October bad acts evidence was admitted because "it relates, as I stated earlier, to motive, intent, lack of mistake, and things of that nature; and not on the offense charged in the indictment."
 
 
 11
 1.The district court's procedure.
 
 
 12
 As a threshold matter, we note that the district court did not specify the precise purpose for admitting the prior bad acts evidence, but merely read off the statutory "laundry list" of potentially proper uses. We prefer that the district court specify the precise purpose for which 404(b) evidence is admitted. Rawle, 845 F.2d at 1247; see also Wright & Miller, Federal Practice and Procedure: Evidence § 5249 (The offeror must specify the issue proposed to be proved by the evidence of the other crimes). However, even if the preferred procedure is not followed, the district court's decision will be sustained if the evidence was admissible to prove any one of 404(b)'s permitted uses. Rawle, 845 F.2d at 1247.
 
 
 13
 2.The merits.
 
 
 14
 In this appeal, the government argues that the "other acts" evidence was admissible to prove Fleming's identity and intent. We will address both of these grounds.
 
 
 15
 a.Identity.
 
 
 16
 The government relies on United States v. Blevins, 960 F.2d 1252 (4th Cir. 1992), to argue that the officers' testimony was relevant to demonstrate Fleming's "identity" as a member of this conspiracy. In Blevins, a conspirator described a behind-the-scenes co-conspirator to a police informant. The description consisted of the co-conspirator's physical characteristics and referred to the circumstances of an earlier drug bust in which the co-conspirator had been arrested. At trial the government proved that the defendant was the behind-the-scenes coconspirator by proving that he was the person arrested at the earlier drug bust. Because the description specifically referred to the prior conviction, admission of that conviction was relevant to proving the co-conspirator's identity. The defendant's prior bad acts were not used to show that he was likely to have committed the crime.
 
 
 17
 In this case, however, the government is attempting to use "identity" as a synonym for guilt. See United States v. Wright, 901 F.2d 68, 69 (7th Cir. 1990) ("By 'identity' the district court must have meant 'guilt,' and that is an impermissible equation."); United States v. Fawbush, 900 F.2d 150, 151 (8th Cir. 1990) (404(b) evidence is admissible to show "identity" if it shows a unique method tending to establish the defendant as the actor). Admitting prior acts to establish "identity" in a case that does not involve a"modus operandi " or a Blevins situation (i.e. the defendant has been described by reference to a prior conviction), is precisely what Rule 404(b) was designed to prohibit.
 
 
 18
 b.Intent.
 
 
 19
 A not guilty plea puts into issue every element of the crime for which the defendant was charged. Therefore, the government was required to prove Fleming's intent, i.e., that he willfully entered into a conspiracy to distribute crack. United States v. Clark, 928 F.2d 639, 641-42 (4th Cir. 1991).
 
 
 20
 We believe that Rule 404(b) permits the introduction of Fleming's prior drug sales in order to prove that he intended to enter the conspiracy to distribute the crack. United States v. DiZenzo, 500 F.2d 263, 265 (4th Cir. 1974) (similar acts evidence was relevant to proving intent to distribute counterfeit currency when the defendant pleaded not guilty); United States v. Parziale, 947 F.2d 123, 129 (5th Cir. 1991) ("[I]n a conspiracy case the mere entry of a not guilty plea raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence.") (citations omitted), cert. denied, 112 S.Ct. 1499 (1992); United States v. Stubbs, 944 F.2d 828, 836 (11th Cir. 1991) ("Evidence of prior drug dealings is highly probative of ... involvement in a conspiracy.") (citations omitted).
 
 
 21
 We emphasize that our ruling does not mean that prior acts evidence is admissible in any case where the defendant pleads not guilty. As we will discuss below, the district court may determine that the prior acts are so dissimilar that they have little or no probative value.
 
 
 22
 Additionally, if the defendant stipulates his intent, thereby removing this element from the government's burden of proof, there may be less need to admit the evidence of the prior bad acts. United States v. Costa, 947 F.2d 919, 925 (11th Cir. 1991), cert. denied, 112 S.Ct. 2289 (1992).
 
 
 23
 B.Rule 403 Balancing.
 
 
 24
 If evidence is admissible to prove one of Rule 404(b)'s specified purposes, the court must then apply Rule 403's balancing test to determine whether the evidence's prejudicial impact substantially outweighs its probative value.
 
 
 25
 We are troubled by the cursory way in which the district court conducted the required balancing test. First, the district court did not make express findings regarding the testimony's probative value or prejudicial impact. We have stated that the preferred procedure is for these findings to be on the record, so that they may be reviewed by this court. Rawle, 845 F.2d at 1247. However, the district court's failure to make such findings does not require reversal, if we can determine that its ruling was not arbitrary or irrational. Id. Second, we note that the officers' testimony was clearly cumulative.[2] Although we acknowledge that the cumulative testimony probably possessed slight probative value, given the exceptionally deferential standard of review for the admission of Rule 404(b) evidence, we do not believe the district court erred. United States v. Greenwood, 796 F.2d 49, 53 (4th Cir. 1986) (district court's decision to admit Rule 404(b) evidence will not be reversed unless it was an arbitrary or irrational exercise of discretion).
 
 
 26
 We cannot ignore that both of Fleming's co-conspirators gave extensive testimony regarding his involvement in the conspiracy, a great deal of physical evidence was found at the crack house, and Fleming was linked to the house by his co-conspirator's testimony and the presence of his jacket and gun. In light of this strong case, any error in admitting needlessly cumulative "other bad acts" evidence would be harmless.
 
 III.
 
 27
 Fleming also challenges the computation of his sentence under the guidelines. We conclude that Fleming waived this issue and affirm.
 
 
 28
 In Fleming's presentence report, the probation officer calculated the base offense level for the drug conspiracy count at Level 34 (at least 150 grams but less than 500 grams of cocaine base). See U.S.S.G. § 2D1.1. Fleming argued that the government had failed to prove his membership in the conspiracy, and, therefore, the drug quantities should be "disregarded entirely." The court rejected Fleming's contention, accepted the probation officer's findings, and set the base offense level at 34.
 
 
 29
 A sentencing hearing is not the proper forum to relitigate factual issues resolved at trial. Fleming was required to challenge the quantity of drugs; the jury had already determined that he was a conspirator. Fleming's failure to contest the factual allegations in the pre sentence report waived his right to litigate the quantity issue. United States v. Dietz, 950 F.2d 50, 56 (1st Cir. 1991) ("A defendant who disputes the factual premises relied upon by the government at sentencing must voice his disagreement then and there, or else forfeit the opportunity to challenge those facts at a later date."). Therefore, Fleming's sentence must be upheld.
 
 IV.
 
 30
 For the aforementioned reasons, Fleming's conviction and sentence are affirmed.
 
 AFFIRMED
 
 
 [1]
 One officer testified that he had observed Fleming make a drug sale in September, 1990. This testimony was stricken because the officer repeatedly used the terms "suspect" and "customer." A second officer then testified about the September sale and an additional October sale. Two officers then testified that they had also witnessed the October sale and that Fleming had fled from the police when they attempted to arrest him
 
 
 [2]
 The district court noted that this was potentially a problem, stating "the Court of Appeals might say that I let too much in."