In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-1487

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT THOMAS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 203-1—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED SEPTEMBER 10, 2002—DECIDED FEBRUARY 25, 2003

Before COFFEY, ROVNER, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Robert Thomas was convicted by a jury of possession of a firearm by a convicted felon and possession of cocaine with intent to distribute. We find that the district court abused its discretion when it admitted as evidence a photograph of one of Thomas's tattoos and two of Thomas's prior convictions for gun possession. Because we believe that admission of this evidence unfairly prejudiced his trial, we remand his case for a new trial.

## I. BACKGROUND

On September 14, 1999, police officers responded to a domestic disturbance call in an apartment building in

Chicago, Illinois, the dispatcher noting a "possible gun on scene." The two responding officers saw Thomas leaving the apartment building's courtyard. They stopped and frisked Thomas, found nothing, and let him leave the courtyard. As the officers walked toward the building, Thomas's sister ran out of the building, pointed at Thomas and, according to the officers, told them that he was the one who pointed a gun at her. Thomas ran from the building and was chased by the officers on foot and by squad car. He was caught a few blocks away.

While Thomas was being handcuffed, a search revealed a bag containing cocaine, but no gun was found. As Thomas was being brought back to the apartment building, his sister told police that he threw a gun in the bushes around the building. After a short search, the officers found a loaded .357 revolver under the stairs leading to the building's entrance. Thomas was charged in Illinois state court with possession of cocaine, pleaded guilty, and was sentenced to three years' incarceration. Paroled on March 9, 2001, Thomas was arrested on a federal complaint charging him with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), as well as possession of over five grams of crack cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a). A jury found Thomas guilty of the gun count and of simple possession of crack cocaine, in violation of 21 U.S.C. § 844, a lesser included offense to the crack possession count. Thomas was sentenced to 235 months' imprisonment and now appeals.

## II. ANALYSIS

Thomas's principal challenge on appeal is that two pieces of evidence, a photograph and evidence relating to prior convictions, were erroneously admitted at trial.

A.  Admissibility of the Photograph of Thomas's Tattoo

Prior to trial, Thomas moved to have a photograph taken of one of his tattoos ruled inadmissible. The tattoo was of two revolvers crossed, with blood dripping around them and the words "Made Nigga's" above them. After the government agreed to redact the blood and words from the photograph, leaving just the images of the guns, the district court ruled that the photograph was admissible, under Federal Rule of Evidence 403, finding that it "cannot say that the probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues."

We review evidentiary decisions for an abuse of discretion. *See United States v. Williams*, 216 F.3d 611, 614 (7th Cir. 2000). Rule 403 requires district courts to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. . . ." When considering the prejudicial nature of evidence under Rule 403, we have noted that "most relevant evidence is, by its very nature, prejudicial, . . . that evidence must be *unfairly* prejudicial to be excluded." *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996) (quoting *United States v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995)) (emphasis in original). Evidence is unfairly prejudicial "if it will induce the jury to decide the case on an improper basis, commonly an emotional one, rather than on the evidence presented." *Id.* (quoting *Pulido*, 69 F.3d at 201). The balancing of probative value and prejudice is a highly discretionary assessment, and we accord the district court's decision great deference, only disturbing it if no reasonable person could agree with the ruling. *See United States v. Kevin Foster*, 30 F.3d 65, 68 (7th Cir. 1994).

We have found tattoos admissible when the tattoo was used to identify the defendant, *see, e.g.*, *United States*

*v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000); *United States v. Brooks*, 125 F.3d 484, 493 (7th Cir. 1997); *United States v. Osborn*, 120 F.3d 59, 61 (7th Cir. 1997); *see also United States v. Esdaille*, 769 F.2d 104, 107 (2d Cir. 1985); *United States v. Bay*, 762 F.2d 1314, 1315 (9th Cir. 1984), or to show the defendant's membership in a conspiracy composed of gang members. *See*, *e.g.*, *United States v. Phillips*, 239 F.3d 829 (7th Cir. 2001); *United States v. Lewis*, 910 F.2d 1367 (7th Cir. 1990). However, we have found tattoos inadmissible when they are only admitted to show membership in a gang, because "the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict." *United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996).

Here, the government agreed to redact from the photograph the writing and image of dripping blood, leaving only the image of the two revolvers. The district court ruled the redacted photo admissible, finding that it went toward showing Thomas's awareness of weapons, an absence of mistake, and his opinion of guns, *i.e.*, that he thought so highly of them as to have them tattooed on his body. The government also stated that it would not argue to the jury that the tattoo was of the actual gun found under the stairs.[1] The picture was entered into evidence via a stipulation, which identified the photograph as a "photograph of a tattoo which is etched in the right forearm of defendant Robert Thomas." The tattoo

---

[1] Nevertheless, in its closing argument, the government responded to the defendant's closing argument implication that the gun may have been planted by asking the jury, "And boy, [the police] got lucky, didn't they, that [the gun they found] happened to be the one that was etched into his arm?"

was not discussed again until closing arguments,[2] and not addressed by a jury instruction.

We fail to see how the redacted photo of the tattoo was admitted for any purpose other than to establish Thomas's propensity to possess guns. The district court's reasons for admitting the photograph, as well as the additional reasons the government provides, all circle back to one basic proposition—because Thomas tattooed a pair of revolvers on his forearm, he is the kind of person who is likely to possess guns.

The district court first stated that it found the tattoo relevant because it showed Thomas's knowledge about the existence of guns. Though such knowledge would be relevant regarding a relatively rare item, firearms are not a specialized area of knowledge. In addition to the omni-presence of guns in today's news and entertainment, their sheer numbers make them commonplace objects. In 1999, the latest year for which statistics are available, 1.3 million new handguns and nearly 2.6 million new rifles and shotguns were sold by licensed firearms dealers. *See* Bureau of Alcohol, Tobacco & Firearms, FIREARMS COMMERCE IN THE UNITED STATES 2001/2002 at 3 (2002). There are nearly five times more licensed firearm dealers in this country than new car dealers,[3] and

---

[2] In addition to the retort presented in footnote 1, *supra*, the government stated in its closing argument that the tattoo was one of the eight ways the jury could know beyond a reasonable doubt that Thomas had possessed the firearm that night.

[3] In 2001, there were 102,913 licensed firearm dealers in the country. *See* Bureau of Alcohol, Tobacco & Firearms, FIREARMS COMMERCE IN THE UNITED STATES 2001/2002 at E-12 (2002). That year, there were only 21,800 dealerships that sold new cars. *See* National Automobile Dealers Association, NADA DATA 2002 at 4 (2002).

surely we would not require evidence that Thomas knew what an automobile was if he were on trial for possession of a stolen automobile. While Thomas's tattoo may indicate that he knows that guns exist, we think that this revelation is of little, if any, probative value, especially when balanced against the prejudicial effect the photo may have had on the jury.

The district court's second reason for finding the photograph admissible, an absence of mistake, is also of little probative value. In this case, the gun was not disguised to look like a pen or other trinket one might read about in a spy novel. Rather, it was a revolver, easily identifiable as such. All that the prosecution must show to prove Thomas guilty of being a felon in possession of a firearm is that (1) Thomas was convicted of a felony, and (2) that he was in possession of a firearm for more than an "academic period of time." *United States v. Conley*, 291 F.3d 464, 473 (7th Cir. 2002). Thomas has never claimed that the police were mistaken when they found the gun, nor that he thought it was anything other than a gun when he was shown it the night of his arrest. While an absence of mistake may be relevant when the defendant professes ignorance when being caught red-handed with incriminating evidence, *see*, *e.g.*, *United States v. Derek Foster*, 939 F.2d 445 (7th Cir. 1991), mistake is not at issue here. Either Thomas did or did not possess a gun that night. Therefore, using the photo of Thomas's tattoo to refute a claim of mistake is of little probative value.

The district court's last reason for admitting the photo of the tattoo, and the government's primary justification for its admission, is that the tattoo shows that Thomas had a high opinion of guns. We think this only goes to propensity. The government stresses repeatedly that the tattoo was not admitted to show that Thomas is the sort of person who likes guns, but rather that Thomas "is proud of his association with the gun charged in the indict-

ment." We fail to see any meaningful difference in that distinction.

According to the government, the tattoo "shows that the defendant has an affinity for such weapons and went to great lengths to display his affection for that type of firearm to the world, because the tattoo is on his forearm, in plain view." This all but admits that the tattoo was offered for its propensity value, as further described when the government tells us in its brief that "one would expect that a person with [a tattoo of a revolver] might possess the .357 revolver," and asks "who, other than a person who advertises his knowledge and love for revolvers and likes to possess them, would have such a tattoo?" In other words, the government asks us, doesn't this tattoo show that Thomas is the kind of person who would have possessed the revolver as charged in the indictment? Indeed, the government put the same question to the jury during closing arguments, asking, "And boy, [the police] got lucky, didn't they, that [the gun they found] happened to be the one that was etched into his arm?" While we might agree that Thomas may be that kind of person, these sorts of questions illustrate how the photo is merely propensity evidence and of no other probative value.

The government next argues that the tattoo is a "pictorial admission" of the fact that he knowingly possessed the gun charged in the indictment. Since there was no direct testimony describing Thomas as actually holding the gun found under the stairs (or any other gun, for that matter), the government argues, despite its promise not to do so during the evidentiary hearing, that "[t]he revolvers emblazoned onto defendant's body are near replicas of the revolver that he possessed in the apartment and then hid." Indeed, in its closing argument, the government stated that the tattoo was one of the eight ways

the jury could know beyond a reasonable doubt that Thomas had possessed the firearm that night.

These images, the government contends, are analogous to the two photographs we found admissible in *Conley*, a felon-in-possession case where the photo showed the defendant brandishing several firearms. We found the photos relevant in *Conley* since they were offered to rebut his defense that he assiduously avoided all contact with firearms and because "the photos showed Conley in *actual possession* of a bevy of weapons." *See Conley*, 291 F.3d at 473 (emphasis in original). Here, Thomas presented no such defense, and the photo was entered into evidence during the prosecution's case-in-chief. The tattoo on Thomas's arm just shows that he wanted a gun tattoo. If a tattoo indicates ownership of an object, the mind reels at the legal and evidentiary consequences of the unicorns, dragons, mermaids, and other flights of fancy that decorate people's bodies.

The government's other variant of its "pictorial admission" argument is that only law enforcement officers, gun store owners, or hunters have a valid reason to get a tattoo of a gun, and that this somehow shows that Thomas is a gun owner just like the globe-and-anchor tattoo shows that its wearer served in the Marine Corps. This argument ignores the redaction of the photo and the context of the guns. This is like redacting the photo of a tattoo of the Marine Corps' globe-and-anchor symbol, leaving only the eagle atop the globe, and using the photo to claim that the wearer was a bird-watcher. In addition, without knowing when Thomas got the tattoo, it is impossible to say that it was drawn after he was convicted of a felony, or if it was a relic of earlier days when it would have been legal for Thomas to pursue his supposed affinity for guns.

The government's final defense of the tattoo's admission into evidence is that the danger of prejudice was

minimized by redacting the photograph, leaving only the revolvers. However, it is the images of the revolvers, not the words and blood that were redacted, that we find unduly prejudicial, so the redaction was of little help here.

B.   Admissibility of Thomas's Prior Convictions

Thomas also moved before trial to have two prior arrests for gun possession ruled inadmissible. On May 23, 1992, Thomas was pulled over in a car in which a revolver was in plain view. Thomas pleaded guilty to a state charge of unlawful use of a weapon. Thomas also pleaded guilty in 1996 to unlawful use of a weapon after he was arrested by an officer who saw him walking down the street with a handgun in his waistband. The district court ruled that witnesses (here, the arresting officers) could testify as to the facts of these incidents, and that Thomas's guilty pleas (though not the docket entries reflecting the judgments of conviction themselves) were admissible to establish knowledge, intent, opportunity, absence of mistake or accident, or as to motive.

To be admissible under Rule 404(b), Thomas's prior convictions must:

> (1) be directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) show that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) be sufficient to support a jury finding that the defendant committed the similar act; and (4) have a probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. Moore*, 115 F.3d 1348, 1354 (7th Cir. 1997) (quoting *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996)). Neither party contests that the second and

third requirements of this test are met. We therefore focus on the first and fourth prongs. The first prong requires us to determine if the prior convictions were admitted to show *anything* other than a defendant's propensity to possess weapons. The fourth prong requires us to apply Federal Rule of Evidence 403 as described above. We use Rule 404(b) to exclude evidence "which has some probative value but the admission of which would tend as a practical matter to deprive a person with a criminal record of the protection, in future prosecutions, of the government's burden of proving guilt beyond a reasonable doubt." *United States v. Wright*, 901 F.2d 68, 70 (7th Cir. 1990).

At trial, the government presented testimony by two Chicago Police Department officers who described their arrests of Thomas for possessing a firearm in 1992 and 1996, and introduced the transcript of Thomas's guilty pleas relating to those arrests. Thomas objected to this evidence before trial, and the district court found it admissible, as it went towards motive, opportunity, and identity. At trial, Thomas properly objected to the introduction of the convictions.

The government asserts that the prior convictions are evidence of motive insofar as the two incidents provided Thomas with first-hand experience with the legal consequences of possessing a gun. Thomas, the government argues, knew more than other people that possessing a gun would put him in severe trouble and, therefore, he would have had a motive to hide the gun in the apartment building. However, the two convictions introduced by the government were state proceedings, not federal, and Thomas was not prosecuted under the felon-in-possession provisions of 18 U.S.C. § 922. As Thomas points out, possession of a concealed weapon is a violation of Illinois state law no matter the criminal history of the possessor. Accordingly, anyone exiting a building onto a public

street with such a weapon, whether a convicted felon or not, would have motive to get rid of the weapon when he left the building. Therefore, Thomas's motive is of some probative value, but no more than showing by other means that he knew that carrying a concealed weapon is against the law.

The government next defends the admission of the convictions by arguing that they are evidence of opportunity, *i.e.*, they show that Thomas was able to acquire firearms, even though, as a convicted felon, he is barred from purchasing them. However, the government is not required to show how Thomas acquired the firearm, just that he had possession of one. Even if he held a gun only to inspect it, Thomas would be guilty under 18 U.S.C. § 922(g). *See United States v. Lane*, 267 F.3d 715, 718 (7th Cir. 2001) ("Once the gun is in the defendant's hands he need only pull the trigger, an act which can be completed in a split second and which is controlled and influenced by nothing more than the defendant's whim."). Therefore, proving that Thomas had the opportunity to buy a firearm illegally is of no probative value as to Thomas's possession of the revolver the night he was arrested in this case.

Last, the government argues that the two prior convictions are evidence of identity, or more specifically, *modus operandi*, as they describe a pattern of Thomas being met on the street carrying a handgun, dropping it, and then fleeing on foot before being apprehended. For *modus operandi* evidence to be useful, it must "bear a *singular* strong resemblance to the pattern of the offense charged" with the similarities between the two crimes "sufficiently idiosyncratic to permit an inference of pattern for purposes of proof." *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996) (internal quotation marks and citations omitted) (emphasis added). Here, the pattern the government considers specific enough to demonstrate

*modus operandi* is a defendant in possession of contra-band, who, upon seeing police at night, drops or hides that contraband, then flees on foot. If a pattern so generic can establish *modus operandi*, this fairly limited exception to Rule 404(b) would gut the Rule, rendering it useless as a check on character evidence that would otherwise be inadmissible. Though we have found slippery slope arguments unpersuasive in the past, *see United States v. Hernandez*, 84 F.3d 931, 935 (7th Cir. 1996), use of such "garden variety" criminal acts to establish a pattern can only lead to an inference of propensity that is improper under Rule 404(b). *See United States v. Carroll*, 207 F.3d 465, 468-69 (8th Cir. 2000).

Given our recognition that "a jury is not likely to insist on the government's satisfying so demanding a standard of proof if the defendant is a thoroughly bad sort who even if not clearly guilty of the crime with which he is charged is no doubt guilty of some [other] crime," *Wright*, 901 F.2d at 70, we find that the minimal probative value relating to Thomas's motive to hide the gun was outweighed by the danger of unfair prejudice that the introduction of the convictions presented. We once again note that district courts "faced with the problem of admissibility of other crimes evidence should cautiously approach the weighing of probative value against prejudicial effect of prior convictions." *United States v. Lewis*, 110 F.3d 417, 420 (7th Cir. 1997).

C. Harmless Error

Though we have found the district court abused its discretion when it admitted the photograph of Thomas's tattoo and his two prior convictions for unlawful use of a weapon, we are constrained by Federal Rule of Criminal Procedure 52(a), which says that "[a]ny error, defect, irregularity or variance which does not affect substantial

rights shall be disregarded." Errors that affect "substantial rights" are those which are "prejudicial," which in this context means that the error must have affected the outcome of the district court proceedings. *United States v. Olano*, 507 U.S. 725, 734 (1993). Rule 52(a) requires the government to prove that the error was harmless, *i.e.*, that there was no prejudice as a result of the error. *See id.* at 735.

The government argues that even if admissions of the tattoo and convictions were erroneous, these errors were harmless. Though it had no direct evidence that Thomas possessed the gun in question, the government believes that the circumstantial evidence was strong enough to withstand any potential prejudice. As primary support, it points to two of Thomas's statements the night of his arrest. At trial, an arresting officer testified that after Thomas had been apprehended and was sitting in the back of the squad car in front of the apartment building, he was shown the revolver found under the stairs. Thomas was asked if it looked familiar, to which he replied, "You could have shot me in my toe. I would have never gave up that gun." Once at the police station, Thomas was placed in an interview room, shown the gun again and asked where he got it. He answered, "Yeah, that's the gun. I bought it in the streets."[4]

While these statements acknowledge the gun and that at one point Thomas bought the gun, we do not think they constitute an admission to possession of the gun. Under 18 U.S.C. § 922(g)(1), defendants are in constructive possession if they have "the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Walls*, 225 F.3d 858, 864 (7th Cir. 2000) (internal quota-

---

[4] Thomas did not testify at trial.

tion and citations omitted). However, mere proximity to a weapon is not enough by itself to confer liability. *United States v. Quilling*, 261 F.3d 707, 712 (7th Cir. 2001) ("[A] [d]efendant's mere presence in a dwelling where a prohibited item was found, without more, is not sufficient to establish constructive possession."); *United States v. Herrera*, 757 F.2d 144, 150 (7th Cir. 1985) (no constructive possession of heroin in a locked footlocker when defendant's fingerprints were not found on the footlocker and he did not have a key). Even when a defendant continues to have weapons in his home that he legally obtained before his felony convictions, he is not guilty of violating 18 U.S.C. § 922(g)(1) without a showing that he exercised control over the firearms. *See Conley*, 291 F.3d at 469 n.2.

Even where we have found constructive possession of firearms when they are found in close proximity to the defendants, *see, e.g.*, *United States v. Alanis*, 265 F.3d 576, 592 (7th Cir. 2001); *Quilling*, 261 F.3d at 712; *United States v. Lloyd*, 71 F.3d 1256, 1266-67 (7th Cir. 1995), the weapons were found in areas over which the defendant exercised control, such as a bedroom, garage, or workplace. Here, the gun was found under the apartment building's entrance stairs, a public area Thomas did not control. There is no indication that Thomas lived in the apartment building, either in his sister's apartment or elsewhere in the building, and therefore constructive possession could not be established by his mere proximity to the firearm.

In addition, the government reminds us that there was testimony that Thomas's sister told the officers that Thomas had a gun, but that statement was admitted via the reporting officers and not the sister herself, who did not testify. This statement was also contradicted by Thomas's girlfriend, who was in the apartment at the

time and neither saw a gun nor heard Thomas's sister yell to the officers.

Without direct evidence showing that Thomas actually possessed the revolver, the government relies on a series of inferences. While it is certainly possible that a jury could conclude that Thomas possessed a firearm that night, we do not believe that the government can show that the admission of either the tattoo or the prior convictions was harmless when the jury was drawing those inferences. Evidence is prejudicial because it causes juries to decide cases "on an improper basis, commonly an emotional one, rather than on the evidence presented." *United States v. Curry*, 79 F.3d 1489, 1496 (7th Cir. 1996).

Regarding the prior convictions, the district court issued a limiting instruction to the jury, telling it that the prior convictions could only be used to determine motive, opportunity, or *modus operandi*. We assume that juries follow their instructions, *see id.* at 1497, unless the matter improperly presented "is so powerfully incriminating that they cannot reasonably be expected to put it out of their minds." *Smith*, 308 F.3d at 739 (citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)). In *Richardson*, the Supreme Court commented on the curative nature of limiting instructions, saying "with regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget." 481 U.S. at 208.

Here, Thomas's two prior convictions incriminate him not via direct evidence, but by inference, and the district court's instruction told the jury to consider the evidence for characteristics of little probative value. If the jury used the two convictions as evidence of motive, opportunity, and *modus operandi*, as instructed, it would find that these three factors all circled back to propensity,

which is why we found admission of the convictions unfairly prejudicial in the first place. During its initial closing argument, the government acknowledged the limiting instruction and framed the prior convictions within its limits. However, in its rebuttal argument, the government ignored the instruction and appealed directly to the propensity value of the convictions, asking the jury, "And boy, [the police] got lucky, didn't they, because there happened to be a person who on two prior occasions had access to a gun and had a motive to hide a gun?"

Though the government attempts to use motive and opportunity as a shield, what the government's use of the prior convictions really does is appeal to Thomas's propensity to carry guns, and nothing more. Therefore, despite the district court's use of a limiting instruction, we are not convinced that the two evidentiary admissions, with their attendant connotations of propensity to possess firearms, had no effect on the jury when it weighed the other circumstantial evidence of possession presented by the government. Accordingly, we find that it was not harmless error to admit either the tattoo or the two prior convictions, and we remand for a new trial.

## D.  Other Issues on Appeal

In addition to his evidentiary challenges, Thomas alleges that the district court erred in not declaring a mistrial when the jury announced that it was deadlocked, that his motion for discovery to inquire as to the prosecution's motives for bringing the firearm charge against him was improperly denied, and that errors were made in the calculation of his sentence. However, because we find that the evidentiary rulings made by the district court warrant a new trial, we need not decide the additional issues raised by the defendant.

## III. CONCLUSION

For the following reasons, we VACATE Robert Thomas's conviction and REMAND for a new trial. Circuit Rule 36 shall apply on remand.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*