**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eddie D. MORANT, Defendant–Appellant.**

No. 03–3348.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 2004.

Decided May 27, 2004.

Michelle L. Jacobs, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Lee R. Jones, Laster & Jones, Milwaukee, WI, for Defendant–Appellant.

Before EASTERBROOK, EVANS, and WILLIAMS, Circuit Judges.

## ORDER

Eddie Morant was convicted after a jury trial of seven counts of armed bank robbery, 18 U.S.C. § 2113(a), (d); one count of using and carrying a firearm during a crime of violence, *id.* § 924(c); and one count of possessing a firearm after sustaining a felony conviction, *id.* § 922(g)(1). Mistrials were declared on three other counts of bank robbery and one other § 924(c) count after the jury was unable to reach unanimous verdicts. The district court sentenced Morant to a total of 384 months' imprisonment. On appeal Morant argues that the district court erred by permitting the government to elicit testimony that he fathered children with two different women, that he lost significant sums of money gambling, and that he gave illegal drugs to both his accomplice in the bank robberies and to a woman who lent him her vehicle to use as a getaway car.

Between June and September 2000, Morant and Joe Lombardo, who would become the government's star witness at trial, committed a spree of bank robberies in the Milwaukee area that netted them more than $59,000. Our view of the facts, recalled in the light most favorable to the jury verdict, relies heavily on Lombardo's testimony.

Morant met Lombardo in 1999 and frequently supplied him with drugs. Morant was a heavy gambler who, according to Lombardo, lost thousands of dollars in 1999 and 2000. Lombardo testified that he and Morant saw a report of a bank robbery on a television newscast and became motivated to devise their own plan for robbing banks. Lombardo explained that the plan for each robbery was the same: Morant gave him a mask, gloves, clothes, a bag, and a gun. Morant also gave Lombardo some crack so Lombardo would be "high" for the robbery. Lombardo then entered the bank, threatened the tellers at gunpoint and demanded that they fill the bag with money. After getting the money, Lombardo ran to a pre-arranged location where Morant was waiting in a getaway car. After meeting Lombardo at the rendezvous point, Morant drove to one of his three girlfriends' homes, where he and Lombardo counted the money, destroyed Lombardo's clothes, cleaned the gun, and washed the money if a dye pack had exploded. Morant kept most of the proceeds of each robbery for himself but gave Lombardo crack and sometimes $200 as payment.

During the robbery spree, Morant maintained relationships with three women: Tiana Saffold, Erica Wright, and Crystal Wilks. He lived with Wilks and had a daughter with her. He had another daughter with Saffold and a secret intimate relationship with Wright. Morant used his relationships with these women to procure vehicles to use during the robberies. Morant borrowed Wright's Volkswagen Jetta to use as a getaway car at least twice, and he borrowed Wilks's Pontiac Grand Am for at least two other robberies. On another occasion he paid Fran Gray, one of his drug customers, in cocaine for the use of her Chevrolet Lumina.

On September 19, 2000, Morant borrowed Wright's Jetta and used it as the getaway car for a robbery of an Equitable Bank branch. After the robbery, Morant dropped off Lombardo, picked up Wright and his and Wilks's infant daughter, and drove to Saffold's house. By this time, detectives who were investigating the robbery spree considered Morant their prime suspect, and they had gone to Saffold's neighborhood because Morant had previously been seen there after a robbery. The detectives spotted the Jetta, which matched a description they had received of one of the getaway cars, and approached it to question Morant. Morant testified at

trial that he first thought the detectives were "realtors" but then became concerned that they might be members of the "Mafia," so he fled on foot. Wright consented to a search of the car, and the detectives recovered a duffel bag containing a loaded pistol with a red mark on its side, envelopes from Equitable Bank, and papers belonging to Morant. A forensic chemist testified that the red mark on the gun was made by an exploding bank dye pack. Later that day police, who were watching Morant's and Wilks's home, arrested Lombardo when he came to the residence. Morant was arrested 18 months later at Saffold's home.

■ Morant argues that the district court erred by allowing the government to present evidence about the children he had with Saffold and Wilks. *See* Fed R. Evid. 403 & 404(b). Morant did not object when the government asked Wilks if she had a child with Morant or when the government asked Lombardo if Morant had a child with Saffold, so our review is only for plain error. *United States v. Knox*, 301 F.3d 616, 619 (7th Cir.2002). Under Rule 404(b), evidence of a defendant's "other crimes, wrongs, or acts" is admissible if:

(1) the evidence is directed towards a matter other than the defendant's propensity to commit the crime charged such as motive, intent, plan, knowledge or identity; (2) the evidence is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar acts; and (4) the probative value is not substantially outweighed by the danger of unfair prejudice.

*United States v. Hughes*, 310 F.3d 557, 565 n. 11 (7th Cir.2002); *see also* Fed.R.Evid. 404(b). But Rule 404(b) applies only to evidence of "other" acts committed by the defendant, and not to evidence that helps explain the timing of events or other circumstances that are "inextricably intertwined" with the charged offense. *See United States v. Hite*, 364 F.3d 874, 881 (7th Cir.2004); *United States v. Ojomo*, 332 F.3d 485, 489 (7th Cir.2003). Even if Rule 404(b) is inapplicable, however, evidence must still satisfy the requirement of Rule 403 that it not be unfairly prejudicial in that it will induce the jury to decide the case on an improper basis, frequently an emotional one, rather than on the evidence presented. *See United States v. Thomas*, 321 F.3d 627, 630 (7th Cir.2003).

Rule 404(b) does not apply to the testimony concerning Morant's two children. Morant used Wilks's car as a getaway car for some of the robberies, and after several of the robberies Lombardo and Morant went to Saffold's residence or Morant's and Wilks's residence to count the money and try to destroy any incriminating evidence. Morant sometimes stored the gun at Saffold's house, and he was arrested at her home after being a fugitive for 18 months. The evidence of Morant's relationships with both Saffold and Wilks helped explain how Morant could gain access to Wilks's vehicle, why he could go to Wilks's or Saffold's homes after the robberies, and why he was able to store the gun or hide from the police at Saffold's residence. If the government had not explained Morant's relationships with these two women—and the fact that he has a daughter with each provided one piece of this explanation—there would have been a conceptual void in the story of the crime. Those relationships were therefore "inextricably intertwined" with the crime itself and not subject to the requirements of Rule 404(b). *See United States v. Senffner*, 280 F.3d 755, 763–64 (7th Cir.2002).

■ Although the evidence concerning Morant's daughters is not subject to analysis under Rule 404(b), it still must satisfy

Rule 403's requirement that its probative value not be substantially outweighed by its prejudicial effect. *Id.* at 764. The government asked Lombardo four background questions about Saffold: what her relationship was to Morant, if she and Morant had any children, where she lived, and if Morant spent time at her home. Likewise, the government's questioning of Wilks about her child consisted entirely of the following exchange:

Q. And did you have a baby with him?

A. Yes.

Q. And when was that baby born?

A. October 24th, 1999.

Q. What's the baby's name?

A. Taylor Marissa Morant.

Q. Taylor—

A. Marissa Morant.

Q. And that's a little girl, right?

A. Correct.

In a trial that lasted five days, involved approximately 40 witnesses, and produced a transcript in excess of 1,200 pages, it is hard to imagine that any prejudice resulted from these brief background questions, much less such severe prejudice that would induce the jury to decide the case on an improper emotional basis. *See Thomas,* 321 F.3d at 630. Indeed, the jury did not convict Morant on four counts of the indictment, which further suggests that the jurors carefully weighed the evidence before them and did not decide the case based on whatever emotions they may have experienced when they learned that Morant had fathered two children with different women.

█ Morant next argues that the district court erred when it allowed the government to introduce evidence of his gambling losses. *See* Fed.R.Evid. 403 & 404(b). The record is unclear as to whether Morant properly objected to the evidence of his gambling losses, which was introduced through various witnesses at different points during the trial. We will assume that he did properly object, and therefore review the district court's decision to admit this evidence for an abuse of discretion, *Thomas,* 321 F.3d at 630, rather than for plain error, *Knox,* 301 F.3d at 619. But regardless of the standard of review, the evidence of Morant's gambling losses satisfied the four-prong test for admissibility under Rule 404(b). *See Hughes,* 310 F.3d at 565 n. 11. The government used Morant's large gambling losses to establish his motive for the robberies. *Cf. United States v. Swan,* 250 F.3d 495, 501 (7th Cir.2001) (government did not establish special circumstances "such as a large gambling debt" that would provide motive for theft). Although gambling losses bear no similarity to bank robberies, the government is not required to prove similarity when the "other act" is offered to establish a motive for the crime. *United States v. Shriver,* 842 F.2d 968, 974 (7th Cir.1988). The losses occurred in the months immediately preceding the first robbery, and the jury could have found that Morant lost money because both Lombardo and Wilks testified that he had. Morant offers no conceivable reason why evidence of his gambling losses was unduly prejudicial, and thus he has failed to meet his burden under either Rule 403 or the fourth prong of the test for admissibility under Rule 404(b). Finally, the district court instructed the jury that it could "consider this evidence [of gambling] only on the question of the defendant's motive to commit the crimes charged, as well as an effort on the part of the government to place the defendant's actions in context." *See United States v. Asher,* 178 F.3d 486, 495 (7th Cir.1999) (limiting instruction can cure potential prejudice resulting from admission of evidence under Rule 404(b)).

Finally, Morant argues that the district court erred in admitting evidence that he distributed illegal drugs. *See* Fed. R.Evid. 404(b). Once again the record is unclear as to whether Morant properly objected to this evidence, but we will assume that our review is for an abuse of discretion, *Thomas,* 321 F.3d at 630, because the argument fails under any standard of review. Morant's drug activities were, as the government argues, inextricably intertwined with the charged crimes and therefore not subject to analysis under Rule 404(b). *See Senffner,* 280 F.3d at 764. Lombardo testified that his relationship with Morant was "based on drugs." Although Morant and Lombardo stole nearly $60,000, Morant paid Lombardo only a few hundred dollars for his efforts; most of Lombardo's payment was in the form of crack. Morant gave Lombardo crack to use before each robbery so he would be high while in the bank. Finally, Morant also paid Gray in cocaine for the use of her vehicle as a getaway car. If the government had not presented evidence of these drug transactions, there may have been a void in the story of the crime, and the evidence was therefore admissible without regard to the strictures of Rule 404(b). *See id.* Lastly, Morant's argument is further undermined because the district court gave the same limiting instruction for Morant's alleged drug activities as it did for his gambling losses. *See Asher,* 178 F.3d at 495.

AFFIRMED.