NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

AUG 3 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    15-10497 |
| Plaintiff-Appellee, | D.C. No. 4:13-cr-00466-JSW-2 |
| v. | |
| DOMINIQUE MARQUIS MARTIN, AKA Domo, | MEMORANDUM[*] |
| Defendant-Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.    15-10502 |
| Plaintiff-Appellee, | D.C. No. 4:13-cr-00466-JSW-1 |
| v. | |
| MELVIN LANDRY, Jr., AKA New Hefner, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted September 12, 2017
Submission Vacated March 5, 2018
Resubmitted August 3, 2020
San Francisco, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: W. FLETCHER, OWENS, and FRIEDLAND, Circuit Judges.[1]

Defendants Melvin Landry and Dominique Martin appeal their convictions and sentences for Hobbs Act robbery, 18 U.S.C. § 1951(a), and possession of a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c). Landry's and Martin's convictions arose out of the activities of a group of individuals, led by Landry, who allegedly robbed several homes and retail stores at gunpoint starting in 2011. This appeal relates to four of that group's alleged robberies: (1) the 2011 robbery of a McDonald's restaurant by two men, one of whom pointed at the manager a gun that the manager described as "silvery or kind of black," like the kind police use; (2) the 2012 robbery of a Wal-Mart customer service desk by three men, one of whom, according to witnesses, had a gun that was silver and had etching on it; (3) the 2012 robbery of a different Wal-Mart customer service desk; and (4) the 2013 robbery of a third Wal-Mart customer service desk by two men, one of whom pointed a gun at several employees that the employees later testified was brushed aluminum, large caliber, and not a BB gun or pellet gun.

---

[1] This case was originally submitted to a panel that included Judge Kozinski and United States District Judge Mark Bennett. After Judges Kozinski and Bennett retired, Judges Fletcher and Owens, respectively, were drawn by lot to replace them. *See* Ninth Circuit General Order 3.2.h. Judges Fletcher and Owens have read the briefs, reviewed the record, and listened to oral argument.

Martin and Landry were arrested and went to trial in the summer of 2015 on a slate of charges relating to the robberies. (An alleged co-conspirator, Rudolpho James, was also arrested, but pleaded guilty.) The government's evidence at trial included surveillance footage, eyewitness testimony, fingerprint evidence, cell phone location data, and incriminating pictures posted on Facebook and Instagram, among other evidence. Ultimately, as relevant here, Landry was found guilty of conspiracy to commit Hobbs Act robbery, three counts of Hobbs Act robbery, and three counts of possessing a firearm during and in relation to a crime of violence. Martin was found guilty of conspiracy to commit Hobbs Act robbery, four counts of Hobbs Act robbery, and three counts of possessing of a firearm during and in relation to a crime of violence. Landry and Martin were each sentenced to more than fifty years of imprisonment and five years of supervised release. Both timely appealed their convictions and sentences, and we affirm.

1. Viewed in the light most favorable to the prosecution, *see United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc), the evidence at trial that Landry and Martin had stolen several thousand dollars in checks and cash from an international retail business, and that that business was forced to temporarily shutter its customer service counter as a result, was sufficient for a rational trier of fact to conclude that the robberies had at least a *de minimis* effect on interstate commerce as required to satisfy the Hobbs Act's jurisdictional

3

requirement. *See* 18 U.S.C. § 1951(a); *United States v. Rodriguez*, 360 F.3d 949, 955 (9th Cir. 2004) ("Robbery of an interstate business . . . typically constitutes sufficient evidence to satisfy the Hobbs Act's interstate commerce element."). The Supreme Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), are not to the contrary, and were decided before our decision in *Rodriguez*, so we would be bound by *Rodriguez* in any event. *See Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003) (en banc).

2.      The district court did not err in concluding that Hobbs Act robbery constitutes a "crime of violence" under the force clause of 18 U.S.C. § 924(c). *See United States v. Dominguez*, 954 F.3d 1251, 1255 (9th Cir. 2020) ("In light of recent Supreme Court cases, we . . . reiterate our previous holding that Hobbs Act armed robbery is a crime of violence for purposes of 18 U.S.C. § 924(c)(3)(A)."); *see also United States v. Mendez*, 992 F.3d 1488, 1490-91 (9th Cir. 1993).

3.      The evidence at trial was sufficient to prove that the guns used in the robberies were "firearms," as that term is used in 18 U.S.C. § 924(c) and defined in 18 U.S.C. § 921(a)(3). Viewed in the light most favorable to the prosecution, the evidence that Landry and Martin had the opportunity and ability to obtain real guns, as well as the security footage and eyewitness and co-conspirator testimony that Landry and Martin were carrying guns, allowed a rational factfinder to

conclude that the guns at issue were real and were not toys or replicas. *See, e.g., United States v. Garrido*, 596 F.3d 613, 616-17 (9th Cir. 2010) (affirming the defendant's § 924(c) conviction on the basis of video evidence and testimony from a victim who described a gun as looking like a "nine millimeter" and felt its cold metal pressed behind his ear, and victim testimony that the defendant had a "gun" that "looked real"); *United States v. Harris*, 792 F.2d 866, 867-68 (9th Cir. 1986) (affirming the defendant's conviction on the basis of surveillance photos and testimony from victims that the weapon was made of "gunmetal," and "appeared to be either a .38 or .45 automatic with the hammer cocked," and describing that evidence as "overwhelming[]" (quotation marks omitted)).

4.      The district court did not err by admitting evidence that Martin was found with a real rifle during a 2009 arrest, two years before the conspiracy allegedly began. Although this evidence was not "intrinsic" to the charges, *see United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013), the district court did not abuse its discretion in concluding that, when accompanied by an appropriate limiting instruction, the evidence was admissible under Federal Rule of Evidence 404(b) to show that Martin had the opportunity and capacity to obtain a real firearm during the alleged conspiracy and to rebut Defendants' arguments that the guns used in the robberies could have been fake, *see United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002). *United States v. Thomas*, 321 F.3d 627 (7th Cir.

5

2003), and *McKinney v. Rees*, 993 F.2d 1378 (9th Cir 1993), are not to the contrary. The issue in both cases was whether the defendant's previous possessions were relevant to prove possession or opportunity and motive to possess a weapon (without regard to whether that weapon was real or fake)—not, as here, whether the weapon the defendant had possessed was real. *See Thomas*, 321 F.3d at 634; *McKinney*, 993 F.2d at 1382-83.

Nor did the district court abuse its discretion in concluding that the probative value of such evidence was not substantially outweighed by a danger of unfair prejudice. *See* Fed. R. Evid. 403; *Beckman*, 298 F.3d at 794.

5. Even if the district court did err by admitting evidence of Landry's arrest with a handgun in 2011 on the grounds that the evidence was inextricably intertwined with the charged offenses, any error was harmless. *See United States v. Torres*, 794 F.3d 1053, 1063-64 (9th Cir. 2015). As with Martin's 2009 arrest, the evidence could have been admitted under Rule 404(b) to show ability and willingness to obtain a real gun around the time of the alleged conspiracy in order to rebut the argument that the guns used in the robberies were fake. And ample other evidence, such as fingerprints, cell phone location data, eyewitness testimony, surveillance footage, and the incriminating testimony of a co-conspirator, supported the government's case.

The district court did not err by admitting evidence of Landry's 2013 arrest,

6

which led to the discovery of a small amount of marijuana, phones containing incriminating pictures, and a live round of ammunition, as intrinsic to the government's case because such evidence was relevant to present a background of the alleged conspiracy.

6.     The district court did not plainly err by permitting a co-conspirator to testify about Martin's and Landry's gun use, because the co-conspirator's testimony was relevant to prove that Martin and Landry had the ability to use and in fact did use real firearms during the alleged conspiracy.  The co-conspirator's trustworthiness was a jury issue.

7.     The district court did not abuse its discretion in concluding that the government had adequately authenticated pictures found on Martin's and Landry's phones and on social media accounts associated with their names or birthdates. The testimony about the origins of the pictures and accounts, the testimony of a Facebook custodian, the testimony of a co-conspirator, and the contents of the photographs themselves constituted sufficient proof that a reasonable juror could find them to be authentic.  *See* Fed. R. Evid. 901(a); *United States v. Tank*, 200 F.3d 627, 630-31 (9th Cir. 2000); *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985).

This evidence was relevant because it appeared to depict Landry and his co-conspirators with, among other things, guns, drugs, and large amounts of cash,

7

suggesting the ability to obtain guns during the period of the alleged conspiracy, and substantiating the government's allegation that the racketeering enterprise had illegally obtained, laundered, and spent stolen cash. And even assuming that some of the pictures were more prejudicial than probative, any error was harmless. Given the other evidence suggesting that Defendants had participated in each robbery—surveillance photos, eyewitness testimony, cell phone location evidence, co-conspirator testimony, and fingerprints—it is not more probable than not that the admission of the contested photographs materially affected the verdict. *See Torres*, 794 F.3d at 1063.

8. Although it may have been impermissibly suggestive for police to both deploy a lineup in which Landry was the only suspect with a mole and refresh a witness's memory with photos of the crime itself, *see United States v. Beck*, 418 F.3d 1008, 1012-13 (9th Cir. 2005), any error was harmless, because the jury saw surveillance footage during the trial, and could compare that footage to Landry himself, who sat before them for the duration of the trial.

9. The district court did not err in denying Landry's request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to consider whether the affidavit used to obtain a warrant for the phone found on his person was misleading. Because Landry did not offer any evidence of the affiant's mental state, the district court did not clearly err in finding that the affidavit did not contain purposefully or

recklessly false statements or omissions. *See id.* at 171; *see also United States v. Perkins*, 850 F.3d 1109, 1115 (9th Cir. 2017). And even if the information omitted from the challenged affidavit—that Landry was not the only person who possessed the phone—had been included, it would not have prevented the government from establishing probable cause. *See Franks*, 438 U.S. at 155-56, 171-72.

10. The jury instruction on the elements of aiding and abetting liability under 18 U.S.C. § 924(c) was not plainly erroneous. It implemented the holding of *Rosemond v. United States*, 572 U.S. 65 (2014), and to the extent our decisions prior to *Rosemond* imposed different requirements, they were overruled by *Rosemond*.

11. Martin's and Landry's sentences are constitutional despite their length. We have previously rejected their contrary arguments. *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998) (explaining that a sentence within the limits set by a valid statute may not be overturned as cruel and unusual on appeal); *see also United States v. Major*, 676 F.3d 803, 812 (9th Cir. 2012) (explaining that sentences of hundreds of years are not cruel and unusual under our precedent); *United States v. Washman*, 128 F.3d 1305, 1307 (9th Cir. 1997) (rejecting the argument that 18 U.S.C. § 3553(f) deprives defendants of their Fifth Amendment right not to testify in their own defense).

**AFFIRMED.**